**AMALGAMATED TRANSIT UNION, LOCAL DIVISION 1338; Henry Pyle, G. W. Bridges, and Charles Work (Individually and as representatives of a class of beneficiaries of a retirement plan); and W. E. Armstrong and H. H. Bennett (Individually and as representatives of a class of beneficiaries of a retirement plan), Appellants,**

**v.**

**The DALLAS PUBLIC TRANSIT BOARD; the City of Dallas; the Dallas Transit Company; the Mercantile National Bank at Dallas, C. W. Levy and 59 named individuals, Appellees.**

**No. 17097.**

Court of Civil Appeals of Texas.

Dallas.

May 31, 1968.

Rehearing Denied June 28, 1968.

Second Rehearing Denied July 26, 1968.

L. N. D. Wells, Jr., of Mullinax, Wells, Mauzy, Levy & Richards, for appellants.

Arthur J. Riggs, of Johnson, Bromberg, Leeds & Riggs, Ted P. MacMaster, Asst. City Atty., Dallas, for appellees.

CLAUDE WILLIAMS, Justice.

This is an appeal from a judgment of the district court construing and reforming a pension Plan and Trust agreement.

## FACTS

For a number of years there has existed a system of public mass transportation for the general public of Dallas, contiguous unincorporated areas and adjoining municipalities, same being commonly known as the Dallas Transit System. This transit system was formerly owned and operated by a privately owned company, the Dallas Transit Company (hereinafter referred to as Company). The bus operators and mechanics employed by the Company were represented in collective bargaining by Division 1338, of the Amalgamated Transit Union [1] (hereinafter called Union). On April 6, 1960, following collective bargaining, the Company and the Union, representing certain employees of the Company who were members of the Union, jointly established a pension Plan and Trust agreement providing pension benefits for the Transit System's employees "who were eligible for Union membership and * * * regularly and continuously employed by the Company * * *." The Plan and Trust provided for contributions by both the employer and the employees in specified percentages of income and designated the Mercantile National Bank at Dallas (here-

---

1. Formerly known as "Division 1338 of the Amalgamated Association of Street, Electric Railway and Motor Coach Employes of America."

inafter called Trustee Bank) as trustee of the pension funds. Pursuant to the Trust Agreement and the Plan, the principal administrative duties of the Plan, with instructions to the Trustee Bank, are concentrated in the hands of a retirement committee consisting of a chairman and three additional members, two to be designated by the Company and two by the Union.

The Plan provided that all acts, decisions and determinations of the retirement committee shall be made with the consent and approval of the majority of the members thereof and that in the event a majority cannot agree such items in disagreement will be referred to the Plan actuary who is designated an impartial arbiter whose decisions shall be binding on all parties. Another provision of the Plan provides that the Company and the Union shall have the right, by mutual consent, to amend the Plan, such amendment being evidenced by a written instrument executed in the name of the Union and of the Company.

On December 9, 1963, the City Council of the City of Dallas enacted Ordinance No. 10086 which provided that there was thereby created a department of the City of Dallas to be known as the Dallas Public Transit Department, the purpose and function of which was to acquire, maintain and operate a system of public mass transportation for the general public of Dallas, contiguous unincorporated areas and adjoining municipalities. The ordinance, in Section 2 thereof, created the Dallas Public Transit Board (hereinafter called Board)

"for the purpose of the control, management, operation and administration of this department * * *." This ordinance was enacted pursuant to the authority of Art. 1118w, Vernon's Ann.Civ.St. of Texas.[2]

On December 23, 1963 the City of Dallas entered into a contract of sale with the Company, by the terms of which the City purchased all of the physical assets comprising the bus and trolley coach transit system in the City and County of Dallas, for the sum of $5,500,000. Section V of the contract provided that the Company would transfer to the City:

" * * * its rights, if any, as now exist or may hereafter accrue in the properties, physical assets and records belonging to the various retirement systems of the officers and employees so that the same may be administered by purchaser or the trustee, as the case may be, for the benefit of those for whom these retirement systems were established."

Section XIII provided:

"The purchaser, however, is not assuming or recognizing any union contracts."

Thereafter the City of Dallas assumed the retirement Plan and continued to make payments thereunder but expressly refused to assume any Union contract and the Trustee Bank was advised that the City and representatives of the Board, pursuant to Art. 5154c, V.A.C.S.,[3] and Section 2(2) of the

2. Article 1118w, Vernon's Ann.Civ.St. of Texas, Sec. 1, provides:
"Any city or town, including any Home Rule City operating under Title 28, Revised Civil Statutes of the State of Texas of 1925, as amended (hereinafter referred to as 'city' or 'such city') shall have power to own, hold, purchase, construct, improve, extend and operate street transportation systems for the carrying of passengers for hire within such city, its suburbs and adjacent areas."

3. "Art. 5154c. Public employees, collective bargaining contracts with organiza-

tions representing; strikes; loss of civil service and other rights.
Section 1. It is declared to be against the public policy of the State of Texas for any official or group of officials of the State, or of a County, City, Municipality or other political subdivision of the State, to enter into a collective bargaining contract with a labor organization respecting the wages, hours, or conditions of employment of public employees, and any such contracts entered into after the effective date of this Act shall be null and void.
Sec. 2. It is declared to be against the public policy of the State of Texas

National Labor Relations Act, as amended by 29 U.S.C.A. Sec. 152(2), would refuse to recognize the Union as representing the employees covered by the Plan; refuse to recognize the Union as having any standing to appoint members of the retirement committee; and refuse to recognize the Union as having any right to take any action with respect to said retirement Plan and Trust.

Sec. 2 of Art. 1118w, V.A.C.S. expressly authorized cities to issue bonds and notes which could be sold to secure revenues for the acquisition, purchase, construction, improvement or extension of such transportation system. Pursuant to this statute the City enacted Ordinance No. 10134 on January 8, 1964 which authorized the issuance of $5,500,000 of transit system revenue bonds, the same ordinance ratifying and approving the execution of a deed of trust by the Mayor, City Manager and City Secretary securing the payment of the bond by transfer to the First National Bank at Dallas, as Trustee of the transportation system and all property of every kind used or acquired in connection with the system. This ordinance provides that the system shall be operated by the Dallas Public Transit Board, created by the deed of trust. The deed of trust provided that the management and control of the system during such

time as the obligations are outstanding and unpaid shall be vested in a Board of Trustees designated "Dallas Public Transit Board." It further provided that the Board of Trustees shall have absolute and complete authority and power with reference to the control, management and operation of the system.

On February 15, 1965, the City of Dallas enacted Ordinance No. 10874 for the avowed purpose of "more clearly defining the powers and duties of the Board and its relation to the City Council of Dallas." This ordinance provided that the Board shall "maintain and operate" the transit system and "shall be vested with the control, management, operation and administration of said system under the terms and conditions provided in this ordinance and by the terms and conditions of the deed of trust as amended by the supplemental deed of trust." This ordinance provides, inter alia, that the Board members would be subject to the provisions of the charter of the City of Dallas and other laws applicable to the members of the City Council; that members of the Board must reside within the city limits of the City of Dallas; that the Board must have the approval of the City Council before making any capital improvements to the system; that the City Council shall have final control of fares, charges

---

for any such official or group of officials to recognize a labor organization as the bargaining agent for any group of public employees.

Sec. 3. It is declared to be against the public policy of the State of Texas for public employees to engage in strikes or organized work stoppages against the State of Texas or any political subdivision thereof. Any such employee who participates in such a strike shall forfeit all civil service rights, re-employment rights and any other rights, benefits, or privileges which he enjoys as a result of his employment or prior employment, providing, however, that the right of an individual to cease work shall not be abridged so long as the individual is not acting in concert with others in an organized work stoppage.

Sec. 4. It is declared to be the public policy of the State of Texas that no per-

son shall be denied public employment by reason of membership or nonmembership in a labor organization.

Sec. 5. The term 'labor organization' means any organization of any kind, or any agency or employee, representation committee or plan, in which employees participate and which exists for the purposes, in whole or in part, of dealing with one or more employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work.

Sec. 6. The provisions of this Act shall not impair the existing right of public employees to present grievances concerning their wages, hours of work, or conditions of work individually or through a representative that does not claim the right to strike."

and tolls; that the Board must file a monthly financial report for the City Council; that the Board shall keep accounts and records in accordance with the provisions of the charter of the City of Dallas; that all contracts shall be made in the name of the City of Dallas for the benefit of the Dallas Transit System and the contract shall be signed by the City Manager and attested by the City Secretary and countersigned by the City Auditor; that all revenues shall be deposited with the City Treasurer; that the General Manager and officers and employees shall be subject to the provisions of the charter of the City of Dallas concerning a conflict of interests; and that the City Attorney is to represent the system in all legal matters.

The constitution and general laws of the Amalgamated Transit Union outline procedures that are necessary and must be followed by the local division of the Union prior to calling a strike. They provide for the right of the local division to strike when they have any dispute with their employer which cannot be settled and solved.

Inasmuch as the City had taken the position that it could not recognize the Union as representing the employees covered by the Plan, by virtue of Art. 5154c,[4] and since the City refused to recognize the Union as having any right to appoint members to the retirement committee or to take any action with respect to said Plan and Trust, the Trustee Bank sought advice concerning the further administration of the Plan and Trust. Upon advice of counsel the Trustee Bank on October 31, 1966 filed this suit in the nature of a declaratory judgment action naming as defendants the Company, the Union, the Committee, the Board, and three individuals, as representative members of that class of beneficiaries under the Plan and Trust agreement who are currently participants therein, and three other named individuals, as representative members of that class of beneficiaries under the Plan and Trust agreement

who are currently receiving distributions thereunder. The Trustee Bank prayed that the court specifically instruct it with respect to (1) who are the proper parties for the Trustee to deal with and rely upon and specifically, who has the authority to name the committee and how said committee should be constituted as well as who has the authority to administer, amend and terminate the Plan and Trust agreement; and (2) under the existing state of facts, whether the Plan and Trust agreement should be reformed and, if so, how; specifically, how the definition of the eligible group should be stated. Trustee Bank also prayed that it be allowed reasonable compensation from trust fund for the payment of attorney's fees.

The City and Board filed a joint answer, represented by the City Attorney, asserting that the City is the "successor in title" to the Company and "has assumed all the obligations and responsibilities under the employee Trust." They allege that the transit system is now under the control of the Dallas Public Transit Board, created pursuant to Ordinance No. 10874 and that the City is the sole owner of the Dallas Transit System. They further say that pursuant to Art. 5154c, as well as the National Labor Relations Act, the Union no longer can, as a matter of law, represent such employees as beneficiaries under the above Trust, since the collective bargaining agreement between a labor organization and a municipal corporation is specifically prohibited by the statute.

The Union, and individual defendants, filed an answer and cross-action asserting that Art. 5154c is not applicable to the Board or to the employees who operate the transit system, praying that the original action be dismissed and that upon the cross-action the court declare the collective bargaining rights of the transit employees.

Trial was to the court, without a jury, and in granting the application for instruc-

4. Wherever, in this opinion Art. 5154c is referred to it shall mean Vernon's Revised Annotated Civil Statutes of Texas.

tion and declaratory and equitable relief sought by Trustee, the court held: (1) that Trustee is instructed to disregard any provisions in the Plan and Trust requiring recognition of the Union and to deal only with the City or through its duly authorized agencies (currently the Dallas Public Transit Board), and said City is entitled to exercise unilaterally all powers formerly exercised by the Transit Company and/or Union, and said Union being thereby removed as a party to said Plan and Trust; (2) that with respect to the Plan the City acting directly or through its duly authorized agencies (currently the Dallas Public Transit Board) is entitled to exercise all powers formerly exercised by the Transit Company. The court further decreed that the Trustee pay from Trust funds to its attorneys the sum of $13,500. The Union was denied all relief sought by its cross-action. This appeal follows.

## OPINION

In their first five points of error, briefed together, appellants earnestly contend that since the Dallas Public Transit Board is not a "political subdivision" of the State of Texas, and the members of the Board are not "officials of the State, or of a County, City, Municipality or other political subdivision of the State," nor are the employees of the transit system "public employees" within the meaning of Art. 5154c, the trial court erred in holding that such statute was applicable to the Board and employees of the transit system so that it would be illegal for the Board to recognize the Union as requested. The principal basis of appellants' contention that Art. 5154c is not applicable to the factual situation here presented is that the City, through the medium of a series of ordinances, has specifically placed the control, management, operation and administration of the system in the Board, which is a completely autonomous entity and has thereby divested itself of the management and control of the system and its operations. Appellants concede that had the City exercised its rights pursuant to Art. 1118w, V.A.C.S. to itself

operate the system, then Art. 5154c would have applied, forbidding Union recognition and collective bargaining since those in charge of the system would have been "officials of * * * a city, municipality or other political subdivision of the State," within the meaning of the statute.

The City and the Board counter these contentions by pointing to the record that demonstrates without dispute that the transit system was purchased by the City of Dallas; that it is owned by the City of Dallas; and that the City has created an agency in the form of the Board to carry out the actual operation of the system but that such Board is subject to the final control of the governing body of the City of Dallas. They contend that since the Board, though clothed with broad administrative powers, is but an arm, an agency of the City and therefore a "political subdivision" within the meaning of the statute. Such being true, they assert that the court was correct in holding that the members of the Board are "officials" and that the employees are "public employees" within the meaning of the statute.

We agree with appellees' position. Unlike the Board of Trustees created by express act of the Legislature in Bolen v. Board of Firemen, Policemen and Fire Alarm Operators' Trustees of San Antonio, Texas, 308 S.W.2d 904 (Tex.Civ.App., San Antonio 1958, writ ref'd), relied upon by appellants, the Board in this case was created by municipal ordinance passed by the City Council of the City of Dallas as an administrative agency of the City and the people of Dallas. While it is true that it is granted broad powers in many respects, such being expressly designed to remove the administration of the Board from the field of politics, yet in the final analysis the City of Dallas is the ultimate authority in the ownership, control and operation of the system. This fact was recognized by us in the very recent decision of Smith v. City of Dallas, 425 S.W.2d 467 (Tex.Civ.App., Dallas 1968), which involved a suit for personal injuries sustained by a passenger

on one of the buses operated by the system and wherein we held that the Board, and its insurance representative, could not waive legal rights of the City, and that the Board was, in effect, the operative agency of the City.

Since it is evident to us that since the City Council of the City of Dallas appoints the members of the Board and supervises their administrative actions, it is inescapable that such Board members fall within the category of "public officials" as designated by the statute in question. Our Supreme Court in the early case of Kimbrough v. Barnett, 93 Tex. 301, 55 S.W. 120 (1900), defined a public officer or a public official in the State of Texas as follows:

" 'Public office is the right, authority, and duty created and conferred by law, by which, for a given period, either fixed by law, or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of the government, to be exercised by him for the benefit of the public.' "

To the same effect see Northwestern Nat. Life Ins. Co. v. Black, 383 S.W.2d 806 (Tex.Civ.App., Texarkana 1964, writ ref'd n. r. e) ; Knox et al v. Johnson, 141 S.W.2d 698 (Tex.Civ.App., Austin 1940, writ ref'd) ; and 53 A.L.R. 595. By the same token, the employees of the system are unquestionably "public employees" within the meaning of the statute.

The contention of appellees is supported most strongly by the court in San Antonio Ind. School District v. Water Works Board of Trustees, 120 S.W.2d 861 (Tex.Civ.App., Beaumont 1938, writ ref'd n. r. e.), in which case an effort was made by the School District to tax property of the Water Works Board on the theory that since the City Council of San Antonio had appointed the Board of Trustees such Board was not a part of the City and therefore the property was not exempt from taxation. It was contended, as is contended here by appellants, that the Water Works Board had been set apart as a separate and distinct entity from the City of San Antonio. The court denied the contention, holding that the Board was an agency of the City and that the municipality had not divested itself of ultimate authority.

We conclude, therefore, that the trial court was correct in holding that Art. 5154c is applicable and that since the Board is a "political subdivision" and its officers are "officials" and its employees are "public employees" it would be illegal for the Board to recognize the Union which reserved the right to strike. Appellants' points 1 through 5, inclusive, are overruled.

By their sixth point appellants contend that, assuming the applicability of Art. 5154c to the Board, such does not forbid Union participation (a) in the administration of the pension Plan; (b) in the designation of members of the retirement committee; and (c) in joint action with employer amending the Plan. The essence of appellants' argument under this point is that assuming, arguendo, that Art. 5154c is applicable to the Board, and to the employees of the transit system, still such statute does not prohibit the Union participation in the retirement Trust and Plan because such statute is directed against collective bargaining negotiations respecting the wages, hours, or conditions of employment of public employees. Appellants say that the trial court equated (1) collective bargaining respecting the wages, hours and conditions of employment with (2) the designation of members of a "retirement committee". They point to the difference between the two in that the first involves a concerted employee activity to pressure employer to grant substantive concessions agreeable to a group of employees, which is banned by public policy, whereas the second only involves the designations of certain individuals to administer fiduciary duties in interpreting and applying a pension Trust and Plan, which, they contend, is not banned by the statute. In other words, they contend that the mere designation of a trustee is wholly dissimilar from engaging in collective bargaining and therefore

the trial court was without power to perform the major operation upon the Plan and Trust by eliminating the Union participation in the administration of such Plan and Trust and conferring same unilaterally to the City or Board.

We cannot agree with appellants' basic premise that the statute is inapplicable because such premise is predicated upon a too limited view and construction of the Plan and Trust agreement, and also the court's judgment rendered herein, than is actually presented by the record. The Plan and Trust both encompass many provisions relating to not only the basic features thereof but to the administration of the same other than the mere provision for appointment of members of the retirement committee. The trial court's judgment proceeds much further than the mere prohibition of the Union to appoint two members of the retirement committee.

The retirement Plan, entered into in April 1960 between the Company and the Union, is a comprehensive document containing many and detailed provisions concerning the rights and duties of the parties. Following definitions, it defines the employees eligible for retirement benefits and sets forth formulas for computing the benefits and various optional methods of settlement; provides for termination of employment and withdrawal; provides certain vested rights of participants following a definite period of service; commits the Company and Union to enter into a Trust agreement to effectuate the objects of the Plan; provides for a retirement committee to administer the Plan, two members to be designated by Company and two members by the Union; sets forth the powers of the retirement committee; and gives to the retirement committee, in addition to express powers, broad powers as it may reasonably determine from time to time are necessary or appropriate in the full performance of its duties under the Plan and Trust agreement. It further provides that "the Company and the Union shall have the right by mutual consent * * * to amend the Plan

* * *." "Any amendment * * * shall be evidenced by a written instrument executed in the name of the Union and of the Company * * *." It provides that the Company may terminate the Plan and for distribution of the Trust fund on termination thereof.

The Trust agreement, dated July 1, 1960 and signed by the Union and Company, is also a comprehensive document which establishes the Trust and designates the Mercantile National Bank as Trustee; provides for payment from the Trust fund upon authorization of the retirement committee; provides for the investment of the Trust funds and granting the retirement committee the right to direct such investments; provides for the Trust to be qualified under the Internal Revenue Code for Tax Exemption and granting specific authority to the *Union* and the *Company* "to enforce this agreement on behalf of any and all persons having or claiming any interest in the trust fund or under this agreement." It further provides that amendment of the Trust agreement may be had "by the Company and the Union from time to time in any respect whatsoever * * *."

It is apparent from a reading of the Plan and Trust, and a careful analysis of the various provisions contained therein, that the joint appointment by the Union and Company of a retirement committee is but one of the numerous functions to be jointly performed by the settlors of the Trust. For example, one of the most sensitive and valuable rights provided for is the granting to the Union and the Company to amend the Plan from time to time by mutual consent and agreement. It is quite conceivable that such potential amendment or amendments might change the basic characteristics of the Plan and Trust. Again, the right is granted to the Company and Union to enforce the terms of the Plan and Trust on behalf of the parties to be benefited thereby. In each of these areas there is to be considered a possibility of disagreement between the Union and the

Company (now the City) in which event collective bargaining would be inevitable.

Art. 5154c specifically declares it to be against the public policy of the State of Texas for the City to enter into a collective bargaining contract with a labor organization, respective the wages, hours or conditions of employment of public employees, nor may a labor organization be recognized as a bargaining agent for any group of public employees. However, the law, in Section 6 thereof, plainly provides that the "provisions of the Act shall not impair the existing right of public employees to present grievances concerning their wages, hours of work, or conditions of work individually or through a *representative that does not claim the right to strike.*" (Emphasis added.) See Beverly v. City of Dallas, 292 S.W.2d 172 (Tex. Civ.App., El Paso 1956, writ ref'd n. r. e.). In a collective bargaining agreement dated October 1, 1963, entered into between the Union and the Company after the Trust and Plan had been established, but prior to the time the City purchased the system, it was therein agreed and understood that the Company recognized the Union as the exclusive collective bargaining agency for the Union employees of the Company in regard to matters covering hours of labor, rates of wages, working conditions, and establishing the means of settling grievances, disputes and controversies arising between the parties. It is conceded that the Plan and Trust were both entered into between the Union and the Company as a result of collective bargaining.

■ We are convinced that the instruments with which we are now dealing, the Plan and the Trust, while not collective bargaining agreements, as such, do result from collective bargaining agreements and necessarily provide, by their very terms, the continuation of collective bargaining

agreements between the Union and the Company. We think it quite obvious that it would have been illegal for the City of Dallas to have entered into the Plan and Trust agreement in their inception. Being illegal as against the public policy to enter into a collective bargaining agreement with the Union, a fortiori, it is against the public policy of Texas for the City to administer the collective bargaining contract once it has been entered into.

We are also convinced that the pension Plan and Trust fall clearly within the "wages, hours or conditions of employment of public employees" provision of the statute in question. Probably the leading case on the question of whether a retirement or pension plan is a mandatory subject of collective bargaining is Inland Steel Co. v. National Labor Relations Board, 170 F.2d 247, 12 A.L.R.2d 240 (7th Cir. 1948, cert. denied 336 U.S. 960, 69 S.Ct. 887, 93 L.Ed. 1112). In that case employer argued that its pension plan was outside the scope of collective bargaining while the Union and the National Labor Relations Board argued to the contrary. The court, in a well-reasoned and extensive opinion, held that the pension plan is one of the "conditions of employment" and therefore an extension of the collective bargaining agreement.[5]

Accordingly, it is our opinion and we hold that it is illegal for the City of Dallas to be a party to the Plan and Trust with the other party thereto being the Union which claims to be the collective bargaining representative of the Union employees. Appellants' sixth point is overruled.

■ By their seventh point appellants contend that the trial court had no power to so reform the Plan and Trust so as to remove the Union as a party therefrom. In this regard they contend that if it be

5. See also Richfield Oil Corp. v. National Labor Relations Board, 97 U.S.App.D.C. 383, 231 F.2d 717, 58 A.L.R.2d 833; National Labor Relations Board v. J. H. Allison & Co., 165 F.2d 766 (6th Cir. 1948), 3 A.L.R.2d 990, cert. denied 1948, 335 U.S. 814, 69 S.Ct. 31, 93 L.Ed. 369; and National Labor Relations Board v. Black-Clawson Co., 210 F.2d 523 (6th Cir. 1954).

held that bilateral exercise of powers of administration or amendment of the Trust is illegal, then the Trust should terminate and the monies be distributed to the employees. We do not agree with appellants that the court did not possess the legal authority to reform the agreement of the parties so as to remove the Union therefrom, but we do think that the court was in error in so reforming the agreement as to change the bilateral control and administration into a unilateral control vesting solely in the City the right to control and administer the agreements, thereby depriving the employees and beneficiaries of the Plan and Trust from any representation whatsoever.

■■ A court of equity is possessed of authority to apply the rule or doctrine of deviation implicit in the law of trusts. Thus a court of equity will order a deviation from the terms of the trust if it appears to the court that compliance with the terms of the trust is impossible, illegal, impractical or inexpedient, or that owing to circumstances not known to the settlor and not anticipated by him, compliance would defeat or substantially impair the accomplishment of the purpose of the trust. Craft v. Shroyer, 81 Ohio App. 253, 74 N.E.2d 589 (Ohio 1947). In ordering a deviation a court of equity is merely exercising its general power over the administration of trust; it is an essential element of equity jurisdiction. Restatement of Law of Trusts, 2d Edition, Sec. 167, p. 351.

Bogert, in his Treatise on Trusts and Trustees, 2d Edition, Sec. 561, explains the doctrine of deviation as follows:

"* * * where there is a conflict between a dispositive provision and administrative direction the latter should give way. The primary and fundamental objects of the trustor are to make certain property transfers to the cestuis and thus secure for them certain advantages * *. The terms of the trust having to do with the manner in which the trustee should act in order to obtain the primary objectives are not on the same level of importance but are rather minor and auxiliary. The jurisdiction of equity to enforce trusts should and does include power to vary the details of administration which the settlor has prescribed in order to secure the more important result, namely, obtaining for the beneficiaries the advantage which the settlor stated he wished them to have."

While the element of impossibility is not relevant here, we are concerned with illegality and impracticality due to a change of circumstances which were not foreseen by the original settlors of the Trust and Plan. "A term of the trust may be illegal although it does not involve the doing of acts which are criminal or which constitute a tort to third person. It may be illegal because it is against public policy to compel the trustee to do acts which, however, might be done without liability by one who owned the property free of trust." Scott on Trusts, 3rd Edition, 1967, Sec. 166; and Restatement of Law of Trusts, 2d Edition, Sec. 166.

Many cases support the application of the doctrine of deviation,[6] both in Texas and other jurisdictions. Colonial Trust Co. v. Brown, 105 Conn. 261, 135 A. 555 (1926); Fenn College v. Nance, 4 Ohio Misc. 183, 210 N.E.2d 418 (1965); Commonwealth of Pennsylvania v. Board of Directors of City of Trusts of City of Philadelphia, 353 U.S. 230, 77 S.Ct. 806, 1 L.Ed.2d 792 (1957); San Antonio Ind. School District v. Division of World Missions, 161 Tex. 471, 341 S.W.2d 896 (1960); and Coffee v. William Marsh

6. This is not to be confused with the doctrine of cy pres which is limited to charitable trusts: Scott on Trusts, 3rd Edition, Sec. 399; Restatement of Law of Trusts, 2d Edition, Sec. 399; Craft v. Shroyer, 81 Ohio App. 253, 74 N.E.2d 589 (1947).

Rice University, 408 S.W.2d 269 (Tex. Civ.App., Houston 1966, writ ref'd n. r. e.).

While we are convinced that the court possessed the power to reform the Plan and Trust agreement we are also persuaded that the action of the court in changing the bilateral administration of the Plan into a unilateral administration by the City is not for the best interest of the employees who are the sole beneficiaries of the Plan and Trust.[7] We cannot agree with appellees' statement that the employees are not deprived of a right by the restructuring of the plan. The carefully drawn Trust and Plan assured the employee-beneficiaries that they would have a voice in the administration of the Plan but the court's action has in effect taken from them any voice or representation in the day to day administration of the Plan.

It is no answer to say that the employees possess the right to demand that the Plan and Trust be administered in accordance with the law. It is manifestly clear from the instruments in question that the original settlors intended the administration of the Plan, and even the very life of the Plan itself, be partially vested in the employee-beneficiaries. Of course, as we have pointed out, due to change in circumstances unforeseen by the original settlors a portion of the original Plan and Trust has become illegal since the employees may not be represented by a labor organization which reserves the right to strike. But this is not to say that a reformation within the law is not entirely possible which will avoid the consequences of illegality by permitting the employees to have representation in the administration of the Plan and Trust, provided however, that such representation not be by an organization or group possessing the right to strike.

Accordingly, it is our judgment that the trial court's decree should be reformed by providing that the Plan and Trust should be modified so as to provide for bilateral authority between the City of Dallas and the employees who are beneficiaries under such Plan and Trust, acting by and through their duly authorized representative or representatives, provided however, that such representative or representatives do not claim the right to strike.

Specifically, the judgment of the trial court is modified, as to Paragraph 1, as follows:

1. "That the application for instruction and Declaratory and Equitable Relief by Trustee be granted. The said Trustee is hereby instructed to disregard any provisions in the Plan and Trust designated 'Trusteed Retirement Plan for Union Employees of Dallas Transit Company' requiring recognition of Defendant Transit Union and said Transit Union is thus being removed as a party to said Plan and Trust. In the administration of the Plan and Trust the employees who are beneficiaries under such Plan and Trust are granted the right and privilege of selecting or electing their own representative or representives, provided such representative or representatives do not reserve the right to strike, to be substituted for and in lieu of the Union in the administration and other provisions of the Plan and Trust."

In Point 8 appellants assert that the action of the court in changing the pension Trust to grant unrestricted unilateral control of the Trust fund constitutes unjust enrichment of the employer and is therefore inequitable. Our action in reforming the court's judgment and eliminating the unilateral control by the City and

---

7. While not applicable here, it is important to note the mandatory provision of the National Labor Relations Act, 29 U.S. C.A. 186 (1965) which demands that the employers and employees be equally represented in the administration of pension funds. This clearly demonstrates the spirit and intent of the law not to deprive employees of their right to participate in the administration of pension plans.

restoring bilateral control to the City and the employees will have the effect of completely eliminating this contention. However, there is no evidence in this record that the City of Dallas or the Board would benefit monetarily by the court's judgment. The judgment was careful to preserve the Trust fund intact for the benefit of the beneficiaries. The point is therefore overruled.

By their Point 9 appellants contend that Art. 5154c is unconstitutional as being violative of the Fourteenth Amendment as well as Art. 1, Section 16 of the Constitution, Vernon's Ann.St. prohibiting impairment of contract. They also assert that the application of this article constitutes unconstitutional state regulation of matters within the sphere of federal control. Again, our action in restoring the bilateral administration of the pension fund should have the effect of eliminating any question concerning right of contract. Moreover, the statute in question was not enacted after, but before, the execution of the contracts in question. The Plan and Trust were signed by the parties at a time when the statute involved was in full force and effect. Therefore there was no impairment of contract as contended by appellants. Farmers' Life Ins. Co. v. Wolters, 10 S.W.2d 698 (Tex. Comm'n App.1928). Appellants' contention that the obligation of contract is impaired by the judgment of the court, and therefore unconstitutional, is not valid. Our Supreme Court, in Storrie v. Cortez, 90 Tex. 283, 38 S.W. 154, 35 L.R.A. 666 (1896), pointed out that a decision of a court is not a law, within the provisions of the Constitution relating to impairment of contracts. The court pointed out that to fall within the constitutional prohibition the impairment must be some act of the legislative branch of the state and not by a decision of its judicial department only. Finally, the City of Dallas is not subject to the National Labor Relations Act or the federal legislation concerning the same so that the doctrine of pre-emption has never

been applied in a case where the dispute or the agreement involves the employer and employee relations of a municipal corporation and municipal employees. South Atlantic & Gulf Coast District of International Longshoremen's Ass'n, Ind. et al. v. Harris County-Houston Ship Channel Navigation District, 358 S.W.2d 658 (Tex.Civ.App., Houston 1962). Appellants' Points 9 and 9A are overruled.

Neither do we find any merit in appellants' Point 10 wherein they contend that the trial court's application of Art. 5154c to employees of the Dallas Transit System denies employees' rights of association specifically protected by the First Amendment to the Constitution of the United States, and contrary to the due process protections of the Fourteenth Amendment to the Constitution of the United States. The complete answer to this contention lies in the fact that the employees of the City of Dallas have a right to associate together as a union. This right is not denied. The thing that is denied is that, if they do so associate, they do not have the right to collectively bargain with the City, provided that the Union reserves the right to strike. We think the question of rights herein involved was completely settled by the decision of this court in Dallas Ind. School District v. American Federation of State, County and Municipal Employees, Local Union No. 1442, 330 S.W.2d 702 (Tex.Civ.App., Dallas 1959, writ ref'd n. r. e.). Also, our Supreme Court in Lunsford v. City of Bryan, 156 Tex. 520, 297 S.W.2d 115 (1957), pointed out that the "right to work" statutes involved the legislative intent to protect employees in the exercise of the right of free choice of joining or not joining a union. The purpose of the statute is to afford equal opportunity to work to both classes of employees. Point 10 is overruled.

In their Points 11 and 12 appellants argue that the trial court erred in granting attorneys' fees to be paid from the Trust fund and, alternatively, that such

fees so taxed against the Trust fund are excessive. These points are without merit and are overruled. The Trust agreement specifically provides that the Trustee is authorized to employ counsel and to pay them reasonable compensation from the Trust fund. The Plan itself provides that all costs, expenses and fees shall be payable solely out of the Trust fund.

There is ample evidence in this case to support the contention of appellee Bank that there was a need to employ attorneys to advise them concerning the legal matters presented. Moreover, there is ample evidence to support the award of attorneys' fees.

By Point 13 appellants contend that the court erred in failing to hold that each of the persons actually receiving distributions from the Trust estate at the time the action was filed is a necessary party to the Bank's action, and in rendering judgment reforming the Trust in the absence of these necessary parties. There is no merit to this point. The Trust instrument itself provides that in any action or proceeding affecting the Trust fund or the administration thereof, or for instructions to the Trustee, the Company, the Union and the Trustee shall be the only necessary parties, and no employee or former employee of the Company or the beneficiaries or any other person having or claiming to have an interest in the Trust fund shall be entitled to any notice of process in such action. Even so, the Trustee Bank included in its suit not only the parties named in the Trust instrument but also representatives of both classes of beneficiaries, namely, the current participants as well as those receiving distribution of benefits. There is no conflict of interest between the beneficiaries. This is not a suit to vary the substantive rights of any beneficiary or to determine the disposition of the Trust fund, but rather, is one to determine whether or not the Union should participate with the City in the control of the Plan and Trust. Slay v. Burnett Trust, 143 Tex. 621, 187 S.W.2d

377 (1945); McDonald v. Alvis, 154 Tex. 570, 281 S.W.2d 330 (1955).

In their final Point No. 14, appellants complain that the court erred in denying a supersedeas. Following entry of judgment appellants, by formal motion, requested the trial court to fix the amount of supersedeas bond. The court refused to fix the amount of supersedeas bond. Rule 364(e), T.R.C.P., provides that where the judgment is "for other than money or property or foreclosure" the bond shall be in such amount to be fixed by the court. We think that the court was in error in not fixing supersedeas, as requested by appellants. However, since appellants failed to seek equitable relief from this court through the medium of mandamus, and since the judgment of the trial court is being affirmed, with modifications, we see no reversible error demonstrated. Rule 434, T.R.C.P.

The judgment of the trial court is modified, as above provided, and, as modified, is affirmed.