**Susan C. CONTE, Appellant,**

v.

**Louis M. DITTA, Guardian of the Estate of Doris L. Conte, An Incapacitated Person, Appellee.**

**No. 01–05–00603–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 31, 2007.

---

were precipitated by drug use. *Taylor,* 885 S.W.2d at 158.

**11.** We need not assess whether Appellant was harmed.

Karen Lynn Watkins, Austin, TX, Steven J. Watkins, Houston, TX, for appellant.

Louis Ditta, Houston, TX, pro se.

Michael J. Cenatiempo, Houston, TX, for appellee.

Panel consists of Justices TAFT, ALCALA, and HANKS.

## MEMORANDUM OPINION

GEORGE C. HANKS, JR., Justice.

Appellee, Louis M. Ditta ("Ditta"), acting in his capacity as the Guardian of the Estate of Doris L. Conte ("Doris"), an Incapacitated Person, filed suit seeking the removal of appellant, Susan C. Conte ("Susan"), as trustee of the Conte Family Trust. After a bench trial, the probate court ruled in Ditta's favor and issued two orders. The first order removed Susan as trustee, and the second order modified the terms of the Conte Family Trust and appointed a successor trustee. In three issues, Susan argues that the probate court erred in (1) removing her from her position as trustee, (2) modifying the trust's prescribed method of appointing successor trustees, and (3) appointing a successor trustee. We reverse and remand for orders consistent with this opinion.

## Background

### The Conte Family and Their Trusts

In 1987, Joseph P. Conte, Sr. ("Joseph, Sr.") and Doris, husband and wife, created an inter vivos trust known as the Joseph P. Conte Family Trust (the "Trust"). Joseph, Sr. was named as the original trustee of the Trust. So long as both he and Doris were living, Joseph, Sr. was to "distribute the income and principal of the Trust to [himself and his wife] or to such other person or persons and in such amounts as [he and his wife directed]." Upon the death of either Joseph, Sr. or Doris, the corpus of the Trust was to be divided into three separate trusts. First, the separate and community property of the surviving spouse was to be funneled into a "Management Trust" for the benefit of that spouse. Second, the separate and community property of the deceased spouse was to be placed into a "Family Trust." Finally, a third trust was to be created, using a portion of the Family Trust, to provide for the tax and other expenses accompanying the death of one of the spouses. This third trust was called the "Marital Deduction Trust."

In March 1993, Joseph, Sr. died. He was survived by Doris and their two children, Susan and Joseph P. Conte, Jr. ("Joseph, Jr."). The terms of the Trust provided that, upon the death of Joseph, Sr., Doris, Susan, and Joseph, Jr. were to serve as co-trustees. The co-trustees were obligated to create and fund the three separate trusts for the primary benefit of Doris. The co-trustees were further obligated to make quarterly distributions of the Management Trust's net income to Doris, as well as "such amounts of principal as . . . she may request to provide for . . . her comfort, health, support and maintenance, in order to maintain" the lifestyle to which she was accustomed at the time of Joseph, Sr.'s death.

### B. Administration of the Trust and Litigation

In the initial months following Joseph, Sr.'s death, the day-to-day affairs of the Trust were handled by Joseph, Jr. The Trust agreement demanded that "all financial recommendations made by the Grantors' son, Joseph P. Conte, Jr., when he is serving as Co–Trustee, be seriously considered." It was not until two years after Joseph, Sr.'s death that Susan and Doris became aware that Joseph, Jr. had not administered the Trust in accordance with its terms and had not divided the corpus of the original Trust into the three separate trusts as was required. What followed this discovery was a period of extensive litigation between the members of the Conte family. During a period of approximately 18 months, eight lawsuits were filed between Susan and Joseph, Jr.[1]

1. Generally described, these suits were as fol-    lows:

One of the eight lawsuits filed was an application, from Joseph, Jr., for temporary guardianship over the person and estate of Doris. After a hearing, Doris was declared to be incapacitated. Susan was appointed guardian of her person, and Ditta was appointed guardian of her estate. As a consequence of being declared incapacitated, Doris was removed as a trustee, and Susan and Joseph, Jr. were left with the joint responsibility of administering and managing the Trust.

In August of 1998, acting in his capacity as Guardian of the Estate of Doris, Ditta filed a motion for the appointment of a receiver over the Trust, alleging that Trust assets were being lost or materially injured as a result of the discord between Susan and Joseph, Jr. Rather than entering a receivership, a court order appointing Paula Miller ("Miller") as a temporary successor trustee was agreed to by all of the parties. Susan's and Joseph, Jr.'s fiduciary powers were suspended during the period of Miller's appointment. Miller was charged with funding the three separate trusts and performing a trust accounting. All of her actions were supervised and approved by the trial court. Miller served in this position for more than six years.

Miller's first accounting covered the period of time following the death of Joseph, Sr. in March of 1993 through December of 1999. Her second and third accountings brought the records up-to-date through September of 2004. These accountings revealed that both Susan and Joseph, Jr. were indebted to the Trust for their use of Trust funds to pay personal expenses. It was determined that the total amount owed by Susan was $515,534.32, plus accrued interest. Joseph, Jr. was determined to owe $899,529.80. In addition, Conte Investments, a company in which Susan and Joseph, Jr. each owned a 50 percent interest, was indebted in the amount of $702,276.34. Although Susan initially disputed the amount that she owed, she later agreed to a final judgment approving the accountings. As a condition of the agreed final judgment, the collection of the amounts due from Susan and Joseph, Jr. was deferred during Doris's lifetime unless her financial needs made it necessary for the trial court to order collection.

Around this same period of time, Miller successfully sued to remove Joseph, Jr. from his position as trustee. Joseph, Jr.'s removal left Susan, her fiduciary powers still suspended, as the only remaining trustee.

In April of 2004, Ditta filed the instant lawsuit, seeking the removal of Susan as

1. A suit for declaratory judgment, filed by Doris and Susan, seeking a declaration that a separate suit, filed by both Doris and Susan, to remove Joseph, Jr. as co-trustee would not violate the "no contest" clause in the Trust agreement.
2. A suit filed by Susan seeking a protective order against Joseph, Jr. subsequent to an incident of family violence and assault.
3. A suit filed by Joseph, Jr., against Susan and Doris, alleging that the two women had no authority, in their capacities as co-trustees, to direct the affairs of Joe Conte Toyota, Inc.
4. A suit filed by Susan against Joseph, Jr. for fraud, conversion, and breach of fiduciary duty.

5. A suit for declaratory judgment, filed by Susan alone, seeking a declaration that a suit by Susan to remove Joseph, Jr. as trustee would not violate the "no contest" clause of the Trust agreement.
6. A suit filed by Susan against Joseph, Jr. and his attorneys for conversion and interference with the conduct of the day-to-day administration of the Trust.
7. A suit filed by Joseph, Jr., against Susan and Doris, seeking the rescission of a settlement agreement entered into by the co-trustees and a trust accounting.
8. An application filed by Joseph, Jr. for the appointment of a temporary guardian for Doris and a motion contesting that application filed by Susan.

trustee and the appointment of a successor trustee. Ditta sought removal of Susan for three reasons: (1) she had improperly used Trust funds to pay her personal expenses, (2) her tenuous relationship with her brother interfered with the performance of her duties as trustee, and (3) her personal interests were in conflict with her duties as trustee as a result of her indebtedness to the Trust.

After a bench trial, the probate court ruled in Ditta's favor and ordered that (1) Susan be removed from her position as trustee, (2) the terms of the trust be modified to allow the trial court to appoint a successor trustee, and (3) Frost Bank be appointed as the successor trustee. Pursuant to a request from Susan, the trial court issued the following findings of fact:

1. The Joseph P. Conte Family Trust and the various trusts under Trust agreement dated December 8, 1987 (collectively the "Trust") were created by Joseph P. Conte, Sr. and Doris L. Conte, as grantors.

2. Joseph P. Conte, Sr., served as sole trustee of the Trust until his death on March 8, 1993.

3. Doris L. Conte, Joseph P. Conte, Jr., and Susan C. Conte were appointed as co-trustees of the Trust after Joseph P. Conte, Sr.'s death.

4. Doris L. Conte is the primary beneficiary of the Trust.

5. In November 1997, a temporary guardianship proceeding over Doris L. Conte's person and estate was initiated in this Court.

6. Extensive litigation between Joseph P. Conte, Jr. and Susan C. Conte arose while they served as co-trustees of the Trust.

7. Louis M. Ditta, in his capacity as Court appointed temporary guardian of the person and estate of Doris L. Conte, filed a motion to appoint a receiver over the Trust alleging that Trust assets were in danger of being lost or materially injured due to the actions and inactions of Joseph P. Conte, Jr. and Susan C. Conte as co-trustees of the Trust.

8. On October 8, 1998, prior to the conclusion of the hearing on Louis M. Ditta's motion to appoint a receiver over the Trust, this Court signed an Agreed Order Appointing Successor Temporary Trustee, appointing Paula Miller as Successor Temporary Trustee and releasing and suspending the powers of Doris L. Conte, Joseph P. Conte, Jr., and Susan C. Conte as co-trustees of the Trust.

9. Paula Miller prepared an accounting of the Trust from March 8, 1993 through December 31, 1999.

10. Paula Miller's Trust accounting reported that Susan C. Conte and Joseph P. Conte, Jr., paid a substantial amount of their personal expenses out of the Trust while serving as co-trustees of the Trust.

11. The Trust agreement does not authorize payment of personal expenses of a trustee out of the trust.

12. On January 23, 2001, this Court signed an agreed judgment approving Paula Miller's Trust accounting, and ordered Paula Miller to fund the various trusts created in the Trust agreement as a result of Joseph P. Conte, Sr.'s death.

13. Pursuant to the terms of the Trust agreement, Paula Miller funded the various trusts created in the Trust agreement, namely the Joseph P. Conte Family By

Pass Trust, the Doris L. Conte Management Trust, and the Doris L. Conte Marital Deduction Trust.

14. Paula Miller allocated the amounts paid by the Trust for personal expenses of Susan C. Conte and Joseph P. Conte, Jr., to the Doris L. Conte Management Trust and the Doris L. Conte Marital Deduction Trust.

15. The Trusts lack sufficient liquidity to meet the financial needs of Doris L. Conte.

16. On March 5, 2001, this Court declared Doris L. Conte to be totally without the mental capacity necessary to care for herself and manage her property and financial affairs, and appointed Louis M. Ditta as permanent guardian of Doris L. Conte's estate, and Susan C. Conte as permanent guardian of Doris L. Conte's person.

17. Doris L. Conte was removed as co-trustee of the Trust as a result of her mental incapacity.

18. On January 24, 2003, this Court removed Joseph P. Conte, Jr., as co-trustee of the Trust.

19. On April 27, 2004, and November 3, 2004, Joseph P. Conte, Jr., and Susan C. Conte signed documents re-appointing Susan C. Conte as trustee if she was removed by the Court in this proceeding.

20. The Trust includes provisions for the appointment of a successor trustee if a vacancy is created in the office of trustee.

In addition, the trial court issued the following conclusions of law.

1. As co-trustee of the Trust, Susan C. Conte materially violated the terms of the Trust by paying her personal expenses out of the Trust.

2. Susan C. Conte's violation of the terms of the Trust resulted in a material financial loss to the Trust.

3. Susan C. Conte's violation of the terms of the Trust resulting in her removal is a breach of trust.

4. Susan C. Conte is personally indebted to the Trust, therefore, her personal interests are adverse and in conflict with her duties as trustee.

5. Extensive litigation and hostility between Susan C. Conte and Joseph P. Conte, Jr. adversely affected their ability as co-trustees to administer the Trust consistent with its purpose.

6. This Court has the equitable power to deviate from the terms of the Trust agreement and the statutory power to modify the terms of the Trust agreement due to changes in circumstances since the creation of the Trust by the grantors.

7. It is in the best interests of the Trust and Doris L. Conte to deviate from the terms of the Trust agreement and modify the terms of the Trust agreement for appointing a successor trustee as a result of Susan C. Conte's removal, due to changed circumstances, including the following, (i) improper use of funds of the Trust by Susan C. Conte and Joseph P. Conte, Jr. to pay their personal expenses while serving as co-trustees, (ii) substantial indebtedness owed to the Trust by Susan C. Conte and Joseph P. Conte, Jr., (iii) lack of sufficient liquidity of the Trust to meet the needs of the primary beneficiary of the Trust, Doris L. Conte, and (iv) extensive litigation between Susan C. Conte and Joseph P. Conte, Jr., while serving as co-trustees which

interfered with the proper administration of the Trust.

8. Further, under the circumstances set forth above, it is impractical, inexpedient, and would substantially impair the accomplishment of the purposes of the Trust to permit Susan C. Conte and Joseph P. Conte, Jr., to re-appoint Susan C. Conte as trustee upon her removal.

9. Further, given this Court's familiarity with the administration of the Trust for over six and one-half years, and the concurrent jurisdiction of this court with the Harris County Texas District Court in matters involving inter vivos trusts, it is in the best interest of the Trust for this Court to appoint the successor trustee rather than a district judge of Harris County, Texas.

**Statute of Limitations**

█ In her first issue, Susan argues that the trial court erred when it granted Ditta's removal action and removed her from her position as the sole remaining trustee of the Conte Family Trust. Because it is dispositive of her issue, we limit our discussion to Susan's argument that Ditta was barred from bringing his remov-

al action by the applicable statute of limitations.[2]

Susan's alleged breach of fiduciary duty formed the underlying basis for Ditta's removal action. Accordingly, both parties have briefed the instant appeal as one to which a four-year statute of limitations applies. *See* Tex. Civ. Prac. & Rem.Code Ann. § 16.004(a)(5) (Vernon 2002) (requiring that suit for breach of fiduciary duty be brought no later than four years after the day the cause of action accrues).

█ Statutes of limitations serve to compel the assertion of claims within a reasonable period during which the evidence is fresh in the minds of the parties and witnesses. *Price v. Estate of Anderson*, 522 S.W.2d 690, 692 (Tex.1975). The discovery rule defers accrual of a cause of action until the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to the cause of action. *Trinity River Auth. v. URS Consultants*, 889 S.W.2d 259, 262 (Tex.1994). However, the discovery rule applies only in certain limited circumstances. *See Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996). Generally, application has been permitted in cases where the nature of the injury incurred is inherently undiscoverable and the evidence of the injury is

---

2. Although the trial court did not issue any findings of fact or conclusions of law addressing the statute of limitations, this issue has been properly preserved for our review by Susan's request for amended and additional findings of fact and conclusions of law. In her request for additional findings, Susan specifically requested that the trial court find that:
   a. [Ditta] had actual, personal notice of [Miller's] accounting, which set out the use of Trust funds by [Susan] to pay for her personal expenses, on October 5, 1999.
   b. [Ditta] was aware of litigation between [Susan] and her brother when he sought to have a receiver appointed for the Trust.

c. [Ditta] was aware of litigation between [Susan] and her brother when he signed the Agreed Order Appointing Successor Temporary Trustee on October 8, 1998.
d. [Ditta] filed this action to remove [Susan], modify the Trust and have a successor trustee appointed on April 5, 2004.
Additionally, Susan requested that the trial court make the following conclusion of law.
a. By the time [Ditta] had filed this action to remove [Susan] as trustee, the statute of limitations had run for him to seek removal on the bases alleged in his action to remove [Susan].

objectively verifiable. *See id.* The requirement of inherent undiscoverability recognizes that the discovery rule exception should be permitted only where "it is difficult for the injured party to learn of the negligent act or omission." *Willis v. Maverick,* 760 S.W.2d 642, 645 (Tex.1988). This is particularly true in the context of a fiduciary. *See Altai,* 918 S.W.2d at 456. Fiduciaries are presumed to possess superior knowledge, and the injured party is presumed to possess less information than the fiduciary. *See id.* While a person owed a fiduciary duty has some responsibility to ascertain when an injury occurs, it may be said that the nature of the injury is presumed to be inherently undiscoverable. *Courseview, Inc. v. Phillips Petroleum Co.,* 158 Tex. 397, 312 S.W.2d 197, 205 (1957). The issue in a breach of fiduciary duty case is, thus, when the plaintiff knew or should have known, with the exercise of reasonable diligence, of the legal injury giving rise to the right to sue. *In re Fawcett,* 55 S.W.3d 214, 219 (Tex. App.-Eastland 2001, pet. denied).

Ditta filed the instant removal action on April 5, 2004. As previously stated, Ditta sought to remove Susan for three reasons: (1) she had improperly used Trust funds to pay her personal expenses, (2) her tenuous relationship with her brother interfered with the performance of her duties as trustee, and (3) her personal interests were in conflict with her duties as trustee as a result of her indebtedness to the Trust. Susan argues that Ditta's cause of action to remove for his first and third reasons—improper payment of personal expenses and the resulting conflict of interest—accrued when he first had notice of her misuse of Trust funds. According to Susan, Ditta had notice when he was served with Miller's accounting on October 5, 1999, wherein Susan's payment of personal expenses with Trust funds was set out.[3] Susan further argues that Ditta's cause of action to remove her for his second reason—hostility between Susan and Joseph, Jr.—accrued when Ditta applied for the appointment of a receiver over the Trust or, at the latest, when the agreed order appointing Miller as the successor temporary trustee was signed on October 8, 1998. Ditta acknowledges that he filed the application for the appointment of a receiver because he was concerned that Trust assets were being lost or materially injured as a result of the discord between Susan and Joseph, Jr.

However, Ditta argues that his cause of action did not accrue until the final agreed judgment on Miller's accounting, signed January 23, 2001, became a final and appealable judgment on February 23, 2001. He contends that it was not until that judgment became final that Doris's beneficial interest in the Trust was exposed to a specific and concrete risk of harm. Ditta relies on the "legal injury rule" to support his argument. The legal injury rule has been applied to determine when a cause of action accrues where the defendant's conduct is separated in time from the harm which it causes. *See Zidell v. Bird,* 692 S.W.2d 550, 554 (Tex.App.-Austin 1985, no writ). "The central idea of the rule is that the plaintiff's cause of action accrues when the defendant's conduct first becomes 'unlawful' as to the plaintiff under the law applicable to the circumstances of the case." *Id.* An act becomes "unlawful" at the time when the law affords an immediate remedy to address the harm to the plaintiff's legally protected interest. *See id.* at 555.

**3.** In her report, dated October 5, 1999, Miller indicated that her first accounting was complete and that copies were being distributed to the Trust beneficiaries and their representative.

Ditta's reliance on the legal injury rule is misplaced. Even assuming, *arguendo*, that the legal injury rule applies, Susan's conduct was "unlawful" long before the final agreed judgment on Miller's accounting became final and appealable. That is, Ditta could have brought suit immediately after he learned of the wrongful acts. He was not required to wait for the rendition of a final and appealable judgment from the trial court. Instead, the record evidence shows that, at the time he was served with Miller's original accounting in October 1999, Ditta knew or should have known, in the exercise of reasonable diligence, that Susan had improperly used Trust funds to pay her personal expenses. The record evidence also shows that, at the time the agreed order appointing Miller as temporary successor trustee was signed in October 1998, Ditta knew or should have known, in the exercise of reasonable diligence, that the hostility between Susan and Joseph, Jr. was interfering with Susan's performance of her duties as trustee. The four-year statute of limitations that applies here required Ditta to bring suit based on (1) Susan's misuse of funds by October 2003 and (2) the hostility between siblings by October 2002. Because Ditta did not file suit until April 2004, his removal action was barred by the statute of limitations. As such, the trial court erred in removing Susan from her position as trustee.

We sustain Susan's first issue.

### Modification of Trust Terms and Appointment of Successor Trustee

In issues two and three, Susan argues, respectively, that the trial court erred in modifying the Trust's prescribed method of appointing successor trustees and in appointing Frost Bank as the successor trustee. Ditta responds that the trial court's modification of the Trust's terms and appointment of Frost Bank may be upheld, despite our holding that his action was untimely filed, for two reasons: (1) the statutory provision allowing for judicial modification of the terms of a trust affords the trial court broad discretion to act and (2) the trial court's equitable powers permit the application of the doctrine of deviation. We conclude that our disposition of Susan's first issue compels us to also rule in Susan's favor on these second and third issues.

■ The provision of the Texas Trust Code allowing for judicial modification of the terms of a trust provides that:

(a) *On the petition of a trustee or beneficiary,* a court may order that the trustee be changed, that the terms of the trust be modified, that the trustee be directed or permitted to do acts that are not authorized or that are forbidden by the terms of the trust, that the trustee be prohibited from performing acts required by the terms of the trust, or that the trust be terminated in whole or in part, if

(1) the purposes of the trust have been fulfilled or have become illegal or impossible to fulfill;

(2) because of circumstances not known to or anticipated by the settlor, the order will further the purposes of the trust;

(3) modification of administrative, non-dispositive terms of the trust is necessary or appropriate to prevent waste or avoid impairment of the trust's administration; . . .

(b) The court shall exercise its discretion to order a modification or termination under Subsection (a) in the manner that conforms as nearly as possible to the probable intention of the settlor . . . .

Tex. Prop.Code Ann. § 112.054(a),(b) (Vernon 2007) (emphasis added). The plain language of this statutory provision states that a court may order the terms of a trust be modified *on the petition of a trustee or beneficiary. Id.* § 112.054(a). Having held that the petition filed by Ditta was barred by the statute of limitations, we further hold that there was no petition filed in conformance with section 112.054(a).

█ We next consider Ditta's argument under the equitable doctrine of deviation. Harris County Probate Court Number One is a statutory probate court, and, as such, the practice and procedure therein is that prescribed by law for county courts. *See* Tex. Gov't Code Ann. §§ 25.1031(c)(1), 25.1034(*l*) (Vernon 2004). A county court "may hear and determine any cause in law or equity that a court of law or equity recognizes and may grant any relief that may be granted by a court of law or equity." *See id.* § 26.050. A court of equity possesses authority to apply the doctrine of deviation implicit in the law of trusts. *Amalgamated Transit Union, Local Div. 1338 v. Dallas Pub. Transit. Bd.,* 430 S.W.2d 107, 117 (Tex.Civ.App.-Dallas 1968, writ ref'd n.r.e.). Thus, a court of equity will order a deviation from the terms of the trust if it appears to the court that compliance with the terms of the trust is impossible, illegal, impractical, or inexpedient, or that owing to circumstances not known to the settlor and not anticipated by him, compliance would defeat or substantially impair the accomplishment of the purpose of the trust. *Id.* In ordering a deviation, a court is merely exercising its general power over the administration of the trust. *Id.*

The probate court's sixth through ninth conclusions of law are relevant here:

6. This Court has the equitable power to deviate from the terms of the Trust agreement and the statutory power to modify the terms of the Trust agreement due to changes in circumstances since the creation of the Trust by the grantors.

7. It is in the best interests of the Trust and Doris L. Conte to deviate from the terms of the Trust agreement and modify the terms of the trust agreement for appointing a successor trustee as a result of Susan C. Conte's removal, due to changed circumstances, including the following, (i) improper use of funds of the Trust by Susan C. Conte and Joseph P. Conte, Jr., to pay their personal expenses while serving as co-trustees, (ii) substantial indebtedness owed to the Trust by Susan C. Conte and Joseph P. Conte, Jr., (iii) lack of sufficient liquidity of the Trust to meet the needs of the primary beneficiary of the Trust, Doris L. Conte, and (iv) extensive litigation between Susan C. Conte and Joseph P. Conte, Jr., while serving as co-trustees which interfered with the proper administration of the Trust.

8. Further, under the circumstances set forth above, it is impractical, inexpedient, and would substantially impair the accomplishment of the purposes of the Trust to permit Susan C. Conte and Joseph P. Conte, Jr., to re-appoint Susan C. Conte as trustee upon her removal.

9. Further, given this Court's familiarity with the administration of the Trust for over six and one-half years, and the concurrent jurisdiction of this court with the Harris County Texas District Court in matters involving inter vivos trusts, it is in the best interest of the Trust for this Court to appoint the successor

trustee rather than a district judge of Harris County, Texas.

Even though the probate court justified its modification of the Trust on the grounds that it was "impractical, inexpedient, and would substantially impair the accomplishment of the purposes of the Trust" to allow Susan to act as trustee, as the doctrine of deviation requires, it did so pursuant to Ditta's time-barred petition. As such, the probate court was without authority to make the modification. Generally, equitable relief may only be granted by a probate court upon the timely pleadings and proof presented by a litigant. *See* 34 TEX. JUR. 3d *Equity* § 41 (2002). The only exception to this rule is the equitable doctrine of unclean hands, which may be applied sua sponte by a probate court. *See Thomas v. McNair*, 882 S.W.2d 870, 880 (Tex.App.-Corpus Christi 1994, no writ). There is no evidence that the equitable doctrine of unclean hands is applicable in this case. Accordingly, because the probate court was without authority to make the modification, it was improper to appoint Frost Bank as successor trustee.

We sustain Susan's second and third issues.

### Conclusion

We reverse the judgment of the trial court and remand for orders consistent with this opinion.