REBECCA HAGERTY v. DELILAH HARWELL AND OTHERS.

It seems that the first clause of the following statutory provision (Hart. Dig. Art. 855,) "that on and after the day on which the action for a divorce "shall be brought, it shall not be lawful for the husband to contract any debts "on account of the community, nor to dispose of the land or slaves belong-"ing to the same; and any alienation, made by him after that time, shall be "null and void, if it be proved to the satisfaction of the Judge and jury, that "such alienation was made with a fraudulent view of injuring the rights of "the wife," is controlled by the latter, and that the burden of proving the alienation of land or slaves, as well as of other property, to have been made with a fraudulent view of injuring the rights of the wife, rests upon her, in a suit by her to recover the property from the alienee.

Alienations of community property by the husband, after suit commenced for divorce, although not made with a fraudulent view of injuring the rights of the wife, yet, if not made with a view to the common benefit, will be charged to the husband in the division of the property.

Where the husband, after suit commenced for divorce, alienates a part of the community property, less than his share, or where his separate property is sufficient to compensate for such alienation, although the alienation be made without consideration, the effect is not necessarily to defraud or injure the wife, for she can have compensation in the decree for division of the commu-nity; and therefore, in such cases, if the wife sues to annul such alienation, she must prove the fraudulent intent to injure her rights.

Where the wife brought suit against the grantee of her deceased husband and her husband's executors to have certain slaves inventoried as part of the com-munity property, and called one of the executors as a witness, to whose com-petency the defendants objected, and the Court overruled the objection, but stated to the witness that he was at liberty to testify, but might decline if he chose to do so, whereupon the witness refused to testify, to which ruling plaintiff excepted—it was held there was no error.

Error from Harrison. Tried before the Hon. W. W. Morris.

Suit by the plaintiff in error against Delilah Harwell, as the donee of Spire M. Hagerty, and C. K. Andrews and James H. Hughes, as the executors of said Spire, to have a certain woman slave and her two children inventoried as part of the community property of the plaintiff and said Spire. Spire M. Hagerty died before service of the citation upon him in the suit for divorce, and said suit was abated by his death. The petition contained a prayer for general relief. The defendant Hughes being called as a witness by plaintiff, defendants objected to his competency, and the Court overruled the objection, but stated to the witness that he was at liberty to testify, but might decline if he chose to do so, whereupon the witness refused to testify, to which ruling plaintiff excepted. The other facts of the case appear in the Opinion.

*T. J. & J. H. Rogers*, for plaintiff in error.

*C. M. Adams*, for defendants in error.

LIPSCOMB, J. This suit was brought by the plaintiff in error, to recover her community share of a negro woman and her two children, conveyed by her husband, Spire Hagerty, after the plaintiff had commenced a suit against him for a divorce. The petition alleges that this pretended sale was made without consideration, and with intent to defraud the plaintiff of her community share in the said slaves ; and, though not precisely averred, circumstances are alleged, from which an inference is attempted to be drawn, that it was the design of the conveyance to the defendant in error, to make the slaves free. Notice that the suit for a divorce had been commenced was averred.

The suit was brought and sought to be sustained under Art. 855, Hartley's Digest. It is as follows : " That on and after

" the day on which the action for a divorce shall be brought,
" it shall not be lawful for the husband to contract any debts
" on account of the community, nor to dispose of the lands or
" slaves belonging to the same ; and any alienation made by
" him after that time, shall be null and void, if it be proved to
" the satisfaction of the Judge and jury, that such alienation
" was made with a fraudulent view of injuring the rights of
" the wife." The language of the law clearly rests the prohi-
bition to alienate, on the fraudulent intent with which it was
made, and throws the burthen of the proof of such fraudulent
view of the motive for which it was made on the party im-
peaching its fairness ; and this would have been the result of
an alienation, with a fraudulent intent to defraud the rights
of the other partner in the community, without the aid of the
law cited. The general power given to the husband to man-
age and control the community property, would authorize an
alienation thereof, provided it was not with an intent to de-
fraud the wife. If the husband, without any fraudulent intent
to defeat the rights of the wife, was about to dispose of the
community property, the wife could protect herself by an in-
junction. This is provided for by statute ; but it would nev-
ertheless have been equally available to the party, without the
statutory provision, under the general equity jurisdiction of
our District Courts.

But, to return to the Statute under which this suit is sought
to be sustained, the language, in throwing the gist of the sup-
posed infirmity on the party impeaching it, is somewhat pecu-
liar, and seems to give to the conclusiveness of the opinion of
the judge and jury, on the proof, more than is in general ac-
corded to their opinions. In ordinary cases a Judge may not
be convinced that the jury have been correct in their finding
on the evidence ; yet, if not satisfied that they are wrong, he
will not disturb the verdict, and in like manner the revising
Court in reviewing the question that is often presented, whe-
ther there is error in refusing to grant a new trial, asked for

Hagerty v. Harwell.

on the ground of the verdict not being supported by evidence, or that it is contrary to evidence, will not reverse on the ground that they are not satisfied that a new trial ought to have been refused, but the Court must be satisfied that the verdict is wrong. Now, the language of the Statute is, that " it be proved to the satisfaction of the Judge and jury, that " such alienation was made with a fraudulent view of injuring "the rights of the wife." It would, therefore, seem that a larger discretion is allowed to the jury and the Judge than in ordinary cases.

But we are not disposed, in this case, to give any weight to a distinction of this sort, and we will dispose of it as an ordinary case of overruling a motion for a new trial. We have said that there is no restraint on the power of the husband to alienate a portion of the community property after suit for a divorce, unless such alienation is made with a fraudulent view of injuring the rights of the wife. The evidence in this case is far from fixing that motive on the alienation of the husband; and if such motive can be sustained at all, it is from the circumstances attending the transaction. If free from such fraudulent intent, it is not material whether the money acknowledged in the bill of sale was actually paid or not ; but the truth of this fact of actual payment is left uncertain ; and on that particular fact the jury might well have found one way or the other without subjecting their finding to reversal. If the value of the property in its relative proportion of the amount of the means of the husband, would have the effect to injure the wife's interest or rights, it would be a ground for a presumption, that such was the object of the alienation. But the evidence shows that its value was so very small and trifling, in proportion to the means in the husband's hands, out of which the rights of the wife could be secured as to her share in the community, that it rebuts the possibility of its having any such object in view. The highest estimate put on the property alienated, by the evidence, is about fifteen hundred dollars, out

Hagerty v. Harwell.

of which the wife would be entitled to the one half—say seven hundred and fifty dollars—when the evidence shows the separate property of the husband to be worth from twenty to twenty-five thousand dollars, and the community property worth over thirty thousand dollars. The question was discussed at the last Term of this Court at Austin, how far the alienation of a part of the community property by the husband, after the death of the wife, could be sustained, on the fact that the property so alienated was but a very inconsiderable portion of the community property. The title of the case is not remembered, but it was a suit for some out lots of the town of Gonzales, brought by the purchaser from the heir of the mother, for her share of the lots so sold by the husband, against the heirs or the legal representatives of Bradley, who held under the vendee of the husband. This description will enable the Reporter of this case to give the parties, and he is requested to do so. (Monroe v. Leigh, 15 Tex. R. 519.) We sustained the sale by the husband, and if our opinion was not entirely rested upon the fact, that from the smallness of the amount and value of the property so sold, compared with the amount of the whole community property, the heirs were sufficiently secured, it was an important ingredient in our opinion.

The plaintiff could, in this case, have had her rights allowed to her, in the property so alienated, when the partition of the community property was adjusted, or she could have sued the executors of her husband for the amount to which she was so entitled of the property alienated ; and she may yet do so, unless barred by the limitation of time.

In the argument of the plaintiff's counsel, an effort was made to impeach the alienation, on the assumed hypothesis that there was an adulterous intercourse between the mother alienated, and Hagerty, the husband of the plaintiff, and that one of her children, conveyed by him, was the issue of such adulterous intercourse ; and that the object of the husband in conveying them to his sister, was to secure their freedom. This

was an assumption not warranted by the evidence. But if it had been fully proved, we cannot perceive how it could have tainted this transaction, under the circumstances, with fraud. We do not wish to be understood as giving our judicial sanction to adultery ; but if the sin has been committed, we cannot regard the sin to be lessened or atoned for, by the principal party in that sin neglecting, when it was in his power to provide for, the partner in his guilt and her unoffending offspring. It is making the only mitigation of the offence that is left to the offender ; and it is natural that he should trust the mother and her children, in such cases, to the kindness of his own sister, rather than leave them to the injured and infuriated wife, who would possibly, yea, probably, inflict severity, cruelty and hardship on them, when the offender was beyond the reach of her angry passions. If then that was the real object of the conveyance, as it could be done without injury to the community share of his wife, such object afforded no evidence of a fraudulent view to injure the community rights of the wife.

The bill of exceptions to the ruling of the Court shows no ground of error to reverse the judgment. Hughes, being a party defendant, could have been a witness, provided he was willing to give evidence ; but he had a right to refuse, and this is the only ground presented by the exceptions worthy of notice. The judgment is affirmed.

Judgment affirmed.