**Reverse and Remand; Opinion Filed October 9, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00500-CV

**MARCUS JOSEPH ROPER, Appellant**
**V.**
**KATHERINE ELIZABETH JOLLIFFE, Appellee**

**On Appeal from the 292nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. CV13-00611-V-292ND**

## DISSENTING OPINION

Before Justices Evans, Brown, and Stoddart
Dissenting Opinion by Justice Evans

The majority concludes Marcus Roper did not have the right to a trial by jury in the protective order proceeding that resulted in placing him under a two-year civil injunction. I conclude Roper's right to a jury trial is guaranteed by the Texas constitution and not abrogated by any statute. Accordingly, I must respectfully dissent. I would reverse the trial court's order and remand for further proceedings.

### I. Background

Two police officers responded to Katherine Jolliffe's 911 call. They observed she was crying, shaking, and visibly upset as she reported the physical altercation she had experienced with Roper in his apartment. Andrew Pierini, the resident of the apartment she ran to after the altercation, similarly observed Jolliffe was shaking, her teeth were chattering, and she was very

upset. The officers documented red marks on Jolliffe's body consistent with her account of where and how Roper grabbed her and pushed her. The district attorney filed misdemeanor criminal charges and, separately, a civil protective order application.

In the civil protective order proceeding, Roper perfected his right to a jury trial by written request filed on December 12, 2013. *See* TEX. R. CIV. P. 216. Roper's hearing on the Title 4 protective order was not held until January 28, 2014. Jolliffe does not dispute Roper's request for a jury trial was timely. The trial court denied the request for a jury, then for two days heard the testimony of nine witnesses and the argument of counsel. The trial court granted a civil protective order enjoining Roper for two years from, among other things, committing family violence against Jolliffe, communicating with her in a threatening or harassing manner, and going within 500 feet of her residence, place of work, or school.

Roper appeals urging four issues. In his first issue, Roper argues the trial court abused its discretion when it denied his request for a jury trial. I agree.

## II. Standard of Review

A trial court's denial of a party's request for a jury trial is reviewed for abuse of discretion. *See Mercedes-Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 666 (Tex. 1996). Even in a new or unsettled area of law, clear failure to analyze or apply the law correctly constitutes an abuse of discretion. *See In re Prudential Ins. Co.*, 148 S.W.3d 124, 135 (Tex. 2004) (citing *Huie v. DeShazo*, 922 S.W.2d 920, 927–28 (Tex. 1996)).

## III. Analysis

A final, permanent injunction is an order that disposes of all parties and issues and grants injunctive relief, the duration of which does not depend on any further order of the trial court. *Aloe Vera of Am., Inc. v. CIC Cosmetics Int'l Corp.*, 517 S.W.2d 433, 435 (Tex. Civ. App.— Dallas 1974, no writ). In contrast, a temporary injunction is one that "is effective pending

further order of the court." *Id.* "Whether the restraint continues for six months or six years has no bearing on the question of 'permanency.'" *Id.* at 436; *see also Brelsford v. Old Bridge Lake Cmty. Serv. Corp.*, 784 S.W.2d 700, 702 (Tex. App.—Houston [14th Dist.] 1989, no writ) (agreeing with *Aloe Vera*).[1]

Appellate courts have analyzed family-violence protective orders and concluded that they are appealable, permanent injunctions. The seminal case is *James v. Hubbard*, 985 S.W.2d 516, 518 (Tex. App.—San Antonio 1998, no pet.). In *James*, the court relied on this Court's opinion in *Aloe Vera* to conclude that protective orders under the family code are final, permanent injunctions. This Court and other courts have agreed. *See Cooke v. Cooke*, 65 S.W.3d 785, 788 (Tex. App.—Dallas 2001, no pet.); *see also Turner v. Roberson*, No. 05-11-01272-CV, 2013 WL 2152636 at *2 (Tex. App.—Dallas, May 17, 2013, no pet.) (mem. op.); *Vongontard v. Tippit*, 137 S.W.3d 109, 110 (Tex. App.—Houston [1st Dist.] 2004, no pet.); *Kelt v. Kelt*, 67 S.W.3d 364, 366 (Tex. App.—Waco 2001, no pet); *Striedel v. Striedel*, 15 S.W.3d 163, 165 (Tex. App.—Corpus Christi 2000, no pet.); *Winsett v. Edgar*, 22 S.W.3d 510, 511 (Tex. App.—Fort Worth 2000, pet. denied).[2] In this case, the final order of the trial court disposed of all relief requested as to all parties, granted a permanent injunction against Roper for a duration of two years, and was not subject to further proceedings in the trial court. It is a final, permanent

---

[1] For example, in appropriate circumstances a final, permanent injunction may have a short duration such as eighteen months. *See Halliburton Energy Servs., Inc. v. Axis Techs., LLC*, 444 S.W.3d 251, 255 (Tex. App.—Dallas 2014, no pet.) (trial court granted final, permanent injunction of eighteen months' duration; court of appeals reversed and rendered perpetual injunction for misappropriation of trade secrets); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 134A.003 (West 2013) (final, permanent injunction in misappropriation of trade secrets cases may be granted for reasonable but limited duration).

[2] A protective order issued during the pendency of an ongoing divorce proceeding does not dispose of all issues and parties, so it is interlocutory and not appealable. *See In re K.S.L.-C.*, 109 S.W.3d 577, 579 (Tex. App.—Tyler 2003, no pet.); *Bilyeu v. Bilyeu*, 86 S.W.3d 278, 282 (Tex. App.—Austin 2002, no pet.). These decisions are consistent with this Court's analysis in *Aloe Vera* concluding that issues remained for decision in the trial court so the order from which appeal was perfected was interlocutory, not final. *See Aloe Vera*, 517 S.W.2d at 436.

injunction based on the trial judge's determination that Roper's past conduct was family violence.

Traditionally, the elements of a permanent injunction require a successful plaintiff to prove (1) the existence of a wrongful act, (2) the existence of imminent harm, (3) the existence of irreparable injury, and (4) the absence of an adequate remedy at law. *See Wiese v. Heathlake Cmty. Ass'n*, 384 S.W.3d 395, 399 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *Priest v. Tex. Animal Health Comm'n*, 780 S.W.2d 874, 875 (Tex. App.—Dallas 1989, no writ). "Although a litigant has the right to a trial by jury in an equitable action, only ultimate issues of fact are submitted for jury determination. The jury does not determine the expediency, necessity, or propriety of equitable relief." *State v. Tex. Pet Foods, Inc.*, 591 S.W.2d 800, 803 (Tex. 1979). Accordingly, when contested, a jury must decide the question of past wrongful conduct, but the trial judge decides the remaining equitable issues. *See DiGiuseppe v. Lawler*, 269 S.W.3d 588, 596 (Tex. 2008) ("When contested fact issues must be resolved before a court can determine the expediency, necessity, or propriety of equitable relief, a party is entitled to have a jury resolve the disputed fact issues."); *Operation Rescue-Nat'l v. Planned Parenthood of Hous. & Se. Tex., Inc.*, 975 S.W.2d 546, 554 (Tex. 1998) (judge decides existence of imminent harm); *Priest*, 780 S.W.2d at 876 ("The jury does not determine the expediency, necessity or propriety of equitable relief.").

"A court shall render a protective order . . . if the court finds that family violence has occurred and is likely to occur in the future." TEX. FAM. CODE ANN. § 81.001 (West 2014). Section 85.001(a) requires "the court shall find whether: (1) family violence has occurred; and (2) family violence is likely to occur in the future." *Id*. § 85.001(a). Family violence requires proof of assaultive or abusive conduct, including dating violence. *See id*. § 71.004. Generally, the maximum and default durations of a protective order are both two years. *See id*. § 85.025(a).

But section 85.025(a-1) authorizes protective orders longer than two years and, in fact, does not contain a maximum duration "if the court finds" that the defendant "caused serious bodily injury to the applicant or a member of the applicant's family or household" or has been the subject of previous protective orders. *Id*. § 85.025(a-1).

If we were to sustain Roper's first issue and apply the ordinary division between judge and jury in equitable proceedings, Roper would be entitled to a jury trial only regarding the past wrongful conduct—whether he had committed family violence. In a case involving a protective order longer than two years, a jury would also decide whether a defendant had caused serious bodily injury or been subject to one or more protective orders in the past. Even with a jury trial right, the trial judge would decide whether family violence is likely to occur in the future and all the other equitable issues including the scope and duration of the relief granted in the protective order. *See generally DiGiuseppe*, 269 S.W.3d at 596; *Operation Rescue-Nat'l*, 975 S.W.2d at 554; *Tex. Pet Foods*, 591 S.W.2d at 803; *Priest*, 780 S.W.2d at 876.

Roper argues the Texas constitution protects his right to a jury trial in this protective order proceeding and the family code does not provide otherwise. In the Texas Constitution of 1876 there are two guarantees of the right to trial by jury:

> The right to trial by jury shall remain inviolate. The Legislature shall pass such laws as may be needed to regulate the same, and to maintain its purity and efficiency. . . .

Tex. Const. art. I, § 15.

> In the trial of all causes in the District Courts, the plaintiff or defendant shall, upon application made in open court, have the right of trial by jury. . . .

Tex. Const. art. V, § 10. The first provision, article I, section 15, "provides a right to trial by jury for those actions, or analogous actions, which were tried by jury when the Texas Constitution was adopted in 1876." *Barshop v. Medina Cnty. Underground Water Conservation Dist.*, 925 S.W.2d 618, 636 (Tex. 1996). "It therefore only applies if, in 1876, a jury would have been

–5–

allowed to try the action or an analogous action." *Id*. The second provision, article V, section 10, "protects the right to have a jury resolve fact questions in all 'causes' brought in the district courts." *Tex. Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 526 (Tex. 1995).

"It has long been the law in this state that parties to a hearing on a permanent injunction are entitled to a jury." *Citizens State Bank of Sealy, Tex. v. Caney Invs.*, 746 S.W.2d 477, 478 (Tex. 1988). This has been so before the adoption of the 1876 constitution. *See Green v. Banks*, 24 Tex. 522, 524–25 (1859) (reversing dismissal of injunction claim and remanding so "that the plaintiff may establish the facts upon which this equity arises, upon a trial of the cause, to be had for that purpose. (Upon such trial, either party may demand a jury to determine the disputed facts.)."). Thus, it is "egregious error" to deny a party "its right to a trial by jury at the hearing on the permanent injunction." *Caney Invs.*, 746 S.W.2d at 478.

Before 1876, women had the legal right to sue their husbands and third parties for injunctions, and those cases were tried to juries. In *Cayce v. Powell*, 20 Tex. 767 (1858), a wife's suit against her husband was dismissed because she alleged only lack of good faith of her husband and not fraud. *Id*. at 771. But the court stated the wife's claim could have survived had she sued her husband for fraud, clearly opining she had the capacity to sue her husband:

> The authority conferred upon a married woman, to litigate in her own right, implies the capacity on her part, to conduct the litigation as shall be most conducive to her own advantage. The law has conferred on her the right to litigate; and the right implies the capability.

*Id*.

Further, a wife could sue her husband to enjoin him from selling their community property without an allegation of fraudulent intent. *See Hagerty v. Harwell*, 16 Tex. 663, 665 (1856) ("If the husband, without any fraudulent intent to defeat the rights of the wife, was about to dispose of the community property, the wife could protect herself by an injunction."); *see also Wright v. Wright*, 3 Tex. 168, 177 (1848) (same in divorce action pursuant to statute). Women

could sue third parties for injunction to preserve their property. *See Kelley v. Whitmore*, 41 Tex. 647, 648 (1874) (woman may sue for injunction without her husband joining with her in suit including where "in consequence of the wrongful acts of her husband, she is forced to sue a third party, and may sue alone, or make her husband defendant").

Injunction cases brought by women were tried to juries as recited in the factual statements in certain opinions. *See, e.g., Hughes v. Driver*, 50 Tex. 175, 178 (1878) (woman brought injunction case involving real property; obtained temporary injunction; tried to jury in December 1872 resulting in dissolution of the injunction based on jury's factual findings); *Mabry v. Harrison*, 44 Tex. 286, 290, 293 (1875) (woman brought suit to enjoin sale of property to satisfy husband's creditors; temporary injunction granted; case tried to jury by submitting fact questions to jury; temporary injunction dissolved based on verdict).

Finally, although it occurred after the 1876 constitution, a woman could sue her husband for injunction based on his assault on her. *See Barnes v. State*, 83 S.W. 1124, 1125 (Tex. Crim. App. 1904) (reciting that wife sued for divorce and obtained an injunction based on assault that was also separately the subject of State's prosecution of husband as a crime). From these authorities, it cannot be disputed that women had the right to sue their husbands for injunctions—even based on being assaulted by the husband—and such suits were tried to juries. Whether or not the general social climate at the time—an era in which women could not vote in the elections of judges and prosecutors and could not serve as jurors in the trials of cases—was conducive to women prevailing in their injunction suits does not factor into the constitutional analysis regarding litigants' right to a jury trial of permanent injunction cases before 1876. The authorities above establish that before 1876 both women and men had the right to sue for permanent injunctions and such claims were tried to juries.

Because the right to jury trial of permanent injunctions existed before the 1876 constitution, the legislature cannot abrogate it by statute. *Barshop*, 925 S.W.2d at 636; *Garcia*, 893 S.W.2d at 526. Further, because civil protective orders are permanent injunctions, the right to jury trial would apply to such proceedings. *Barshop*, 925 S.W.2d at 636; *Garcia*, 893 S.W.2d at 526. But the analysis must also consider whether Title 4 of the family code deprives a litigant of the right to trial by jury.

When we interpret a statute, we presume the legislature intended to be consistent with the constitution, so we interpret it so as not to violate the constitution if possible. *See Brady v. Fourteenth Court of Appeals*, 795 S.W.2d 712, 715 (Tex. 1990) (op. on reh'g) ("Statutes are given a construction consistent with constitutional requirements, when possible, because the legislature is presumed to have intended compliance with [the Constitution]."); *State v. Shoppers World, Inc.*, 380 S.W.2d 107, 111 (Tex. 1964) (statute must not be given the one of two reasonable interpretations which will render it unconstitutional); *Prudential Health Care Plan, Inc. v. Comm'r of Ins.*, 626 S.W.2d 822, 827 (Tex. App.—Austin 1981, writ ref'd n.r.e.) ("it is our duty to give the statute an interpretation that will render it constitutional, if it is possible to do so"); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 66–68 (2012).

Jolliffe relies principally on *Williams v. Williams*, 19 S.W.3d 544 (Tex. App.—Fort Worth 2000, pet. denied) to argue that Roper does not have a right to a jury trial in a civil protective order proceeding. In *Williams*, the appellant argued that if Title 4 of the family code deprived him of a right to a jury trial then the statute violated article I, section 17, and article V, section 10 of the constitution. *See id*. at 546. The court in *Williams* disposed of that issue based on the appellant's procedural failure to timely request a jury. *See id*. The *Williams* court then went on in obiter dicta to decide that sections 81.001 and 85.001(a) of the family code deny a

right to a jury trial. But even having made that conclusion, the *Williams* court did not return to address the appellant's issue that the statute was unconstitutional if it deprived him of a jury trial. Instead, the *Williams* court merely recited that appellate courts are to presume statutes are constitutional.[3] I would not recognize *Williams* as authoritative because its discussion of the interpretation of sections 81.001 and 85.001(a) is dicta. In addition, the court inverted the use of the presumption of the constitutionality of a statute. That is, the presumption of constitutionality should lead a court to consider whether there is a reasonable interpretation of the statute that does not violate the constitution and choose that interpretation if possible. *See Brady*, 795 S.W.2d at 715; *Shoppers World*, 380 S.W.2d at 111; *Prudential Health Care Plan*, 626 S.W.2d at 827; *see also* Scalia & Garner at 66–68. Indeed, the *Williams* opinion quite explicitly did not decide the issue before us: if the family code deprives a litigant of a right to a jury trial in a protective order proceeding, does that violate article I, section 15, and article V, section 10 of the Texas constitution. In the case of the constitutional right to a jury trial, the breadth and importance of the right should be kept in mind when deciding whether the legislature excluded the right in Title 4 of the family code:

> We have long recognized that the Texas Constitution confers an exceptionally broad jury trial right upon litigants. *See State v. Credit Bureau of Laredo, Inc.*, 530 S.W.2d 288, 291–93 (Tex. 1975); *Tolle v. Tolle,* 101 Tex. 33, 104 S.W. 1049, 1050 (1907); Tex. Const. art. I, § 15; art. V, § 10. And we have warned that courts must not lightly deprive our people of this right by taking an issue away from the jury. *Young v. Blain*, 245 S.W. 65, 67 (Tex. Com. App. 1922, judgm't adopted, holding approved).

---

[3] Jolliffe also cites two other Fort Worth Court of Appeals opinions that followed *Williams*. *See Aguilar v. Aguilar*, No. 02-11-00370-CV, 2012 WL 6632526, at *4 (Tex. App.—Fort Worth Dec. 21, 2012, no pet.) (mem. op.); *Winsett*, 22 S.W.3d at 512. Neither *Aguilar* nor *Winsett* provides further analysis. Also, the appellant's challenge in *Aguilar* was for violation of the "Seventh Amendment" apparently in reference to the U.S. Constitution's guarantee of jury trial in civil cases. The Seventh Amendment's jury trial guarantee does not apply to the states so the *Aguilar* court's reliance on *Williams* was not the correct analysis although the result was not erroneous. *See City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 719 (1999); *Curtis v. Loether*, 415 U.S. 189, 192 n.6 (1974); *Fertic v. Spencer*, 247 S.W.3d 242, 251 (Tex. App.—El Paso 2007, pet. denied).

*Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 56 (Tex. 1997).

Although *Williams* and its progeny cannot be said to be an unreasonable interpretation of Title 4, a more reasonable reading is that the legislature's use of "the Court" does not distinguish the role of the trial judge from the jury. We instruct jurors when they are sworn to serve that they become officials of the court in which they serve: "Because of the oath you have taken and your selection for the jury, *you become officials of this court* and active participants in our justice system." TEX. R. CIV. P. 226a (emphasis added). So the question is whether the legislature was selecting the trial judge rather than a jury when it provided the definition of "Court" in section 71.002. *See* TEX. FAM. CODE ANN. § 71.002 (West 2014) ("'Court' means the district court, court of domestic relations, juvenile court having the jurisdiction of a district court, statutory county court, constitutional county court, or other court expressly given jurisdiction under this title.").

In section 71.002, the legislature provided an expansive definition of "Court" to provide many courts to which victims of domestic violence could resort for court intervention so a batterer could not challenge the jurisdiction of the court in which the proceedings were filed. No distinction between the role of the trial judges and the juries in those courts is contained in section 71.002. Similarly, the provisions in sections 81.001 and 85.001(a) that "the court shall" do a particular act is a reference to the institution of the court, not a provision that the judge of such court instead of the jury should do the act.

Elsewhere in the family code, the legislature used the same structure that "the court" will make a factual determination which courts have determined require a jury to make that determination. Termination of parental rights is governed by section 161.001 which provides in part, "The court may order termination of the parent-child relationship if the court finds by clear and convincing evidence . . . ." *See* TEX. FAM. CODE ANN. § 161.001 (West 2014). The statute

–10–

makes no mention of a jury deciding the case, but it is an abuse of discretion for a court to deny a timely request for a jury in a termination case. *See In re M.V.G.*, 440 S.W.3d 54, 64 (Tex. App.—Waco 2010, no pet.).

On the other hand, the family code contains numerous examples of provisions that distinguish the role of the trial judge and the jury. *See* TEX. FAM. CODE ANN. § 2.103 (minor's petition for permission to marry to be heard by "the court, sitting without a jury"); § 6.703 ("In a suit for dissolution of a marriage, either party may demand a jury trial unless the action is a suit to annul an underage marriage under Section 6.102."); § 9.005 ("A party may not demand a jury trial if the procedures to enforce a decree of divorce or annulment provided by this subchapter are invoked."); § 54.01 (detention hearing of juvenile in custody conducted without a jury); § 54.02 (juvenile does not have right to jury trial of hearing to transfer to district court for trial of felony); § 54.03(c) (when adjudicating juvenile, "[t]rial shall be by jury unless jury is waived . . . ."); § 54.04(a) (providing juvenile right to jury trial of sentencing portion of trial if determinate sentence possible); § 54.05 (regarding motion to modify sentence under the juvenile justice code, "There is no right to a jury at a hearing to modify disposition."); § 54.10 (authority to conduct jury trials given to referees and associate judges under juvenile justice code); § 55.32(c) (shortening to ten days deadline to request jury for hearing on fitness of juvenile to proceed); § 55.36 (granting juvenile right to jury trial of hearing on fitness to proceed); § 55.43 (hearing on prosecution's motion for restoration after juvenile discharged from mental health facility "shall be conducted without a jury"); § 61.055 (regarding compliance with court orders by parents or other persons, "The juvenile court shall conduct the enforcement hearing without a jury"); § 65.007 ("A child alleged to have engaged in truant conduct is entitled to a jury trial"); § 65.101 (truancy trial of juvenile "is by jury unless jury is waived" and criminal procedural safeguards afforded to juvenile); § 65.259 ("The truancy court shall conduct the enforcement

hearing without a jury."); § 105.002 (general right to trial by jury except in enumerated matters); § 157.422 (no right to jury trial of motion for clarification of final order in suit affecting parent-child relationship); § 160.632 ("The court shall adjudicate paternity of a child without a jury."); § 201.015(i) (in suit affecting parent-child relationship, "[a] party may not demand a second jury in a de novo hearing before the referring court if the associate judge's proposed order or judgment resulted from a jury trial."); § 201.317 (same).

Because we should assume the legislature intended sections 81.001 and 85.001(a) to pass constitutional muster, we should choose the more reasonable alternative that the sections are silent as to the role in equity of the trial judge and jury and left it to the courts to decide. In *State v. Credit Bureau of Laredo, Inc.*, 530 S.W.2d 288 (Tex. 1975), the supreme court analyzed whether a jury trial was required for the enforcement by civil fines of a deceptive trade practices act injunction. After reviewing the statute, the court concluded, "Since the Act is silent about the right to a jury, we must determine whether the Texas Constitution fixes the right." *Id*. at 291. The court then reviewed article I, section 15, and the history that, "[a]t common law, suits for civil penalties were tried as actions for debt, and actions for debt were triable before a jury." *Id*. at 292. The supreme court concluded that the appellant was entitled to a jury trial without specifically determining the meaning of the statute beyond that it was "silent" on the issue.

Sections 81.001 and 85.001(a) are silent as to the division between the trial judge and jury of the equitable issues that must be determined. I conclude the most reasonable result is to follow *Credit Bureau of Laredo* that the silence of the statute is filled by the provisions of the constitutional right to trial by jury. Another way to state this conclusion is that the legislature, by its statutory silence, demonstrated an intent that the courts comply with the constitutional right to a trial by jury of the disputed factual issues of alleged past wrongful conduct and assigned to the trial judge the remaining equitable decisions in sections 81.001 and 85.001(a).

–12–

I conclude Roper had a constitutional right for a jury to decide whether he committed family violence, which sections 81.001 and 85.001(a) of the family code do not abrogate.  The trial court abused its discretion when it denied him that right, for which harm I would reverse and remand the case for further proceedings.


/David W. Evans/
DAVID EVANS
JUSTICE

140500DF.P05