The STATE of Texas, Petitioner,

v.

CREDIT BUREAU OF LAREDO,
INC., Respondent.

No. B–4984.

Supreme Court of Texas.

Nov. 5, 1975.

John Hill, Atty. Gen., Joe K. Longley,
Asst. Atty. Gen., Austin, for petitioner.

Stone & Stone, Emerson Stone, Jr., Jacksonville, Salmanson & Smith, Allen E. Smith, Austin, for respondent.

POPE, Justice.

The question presented is whether the Texas Constitution gives a right to trial by jury in this suit for civil penalties brought pursuant to the Texas Deceptive Trade Practices Act. Tex.Rev.Civ.Stat.Ann. art. 5069, § 10.01 *et seq.* (1971). The trial court denied the defendants' request for a jury and after trial rendered judgment against defendants, Miller and Credit Bureau, for civil penalties in the amount of $35,000. The court of civil appeals reversed the judgment of the trial court and remanded the cause for a jury trial. 515 S.W.2d 706. We affirm the judgment of the court of civil appeals.

On April 11, 1972, the State of Texas brought an action against Edward Miller, individually and d/b/a Credit Bureau of Laredo, Inc. to enjoin certain allegedly deceptive practices conducted in violation of article 5069, section 10.02. Credit Bureau was sending to a number of debtors notices which simulated legal process and official action by public officials. The notice forms were styled "Certificate of Assignment," "Preliminary Law Suit Listing for Civil Court," "Notice to Appeal," "Notice of Impending Execution," and "Seven Day Official Notification." The suit was resolved on April 20, 1972, by an agreed injunction, the terms of which prohibited Miller and Credit Bureau from continuing the deceptive collection practices.[1]

---

1. The injunction was in the following terms:
    "It is therefore, ORDERED, ADJUDGED AND DECREED that the Defendants, Edward Miller, individually and d/b/a Credit Bureau of Laredo, Inc., their agents, servants, and employees desist and refrain from doing the following acts and making the following representations in the pursuit and conduct of their debt collection business within the State of Texas . . .:
    "(1) Mailing, sending, or otherwise transmitting and delivering to delinquent debtors any 'Notice to Appear' commanding the recipient thereof to appear within 72 hours at Credit Bureau of Laredo, Inc., or threatening that legal proceedings will be started against him when said proceedings have never been commenced in the common and regular course of conduct of Defendants' debt collection business.
    "(2) Mailing, sending, or otherwise transmitting and delivering to delinquent debtors any printed form which purports to be a 'Preliminary Law Suit Listing for Civil Court' and/or shows a 'seal' and uses the word 'Civil Court' which indicates or tends to indicate that such form emanates from a bona fide court, and that it is connected and associated with an actual court and therefore simulates a form of court process, and furthermore from:
    "(a) Using language in any form to the effect that Defendants have conducted an investigation of the debtor's monies and property for the purpose of possibly levying upon the same to enforce payment of the debt;

"(b) Using language which would lead a recipient to falsely and erroneously believe that the debt has been referred to an attorney for immediate law suit.

"(3) Representing and holding out to the general public that Defendants have a valid Texas charter and certificate of authority to do business by use of the word 'Inc.' in any name under which the Defendants may do business without a valid Texas charter or certificate of authority as is required under the laws of Texas.

"(4) Mailing, sending, or in any manner transmitting or delivering any form of 'Notice of Impending Execution' which either exhibits or does not exhibit a 'seal', or any form that states or implies that summons or complaint will be filed against the debtor named thereon, or stating, representing, or in any manner implying that the case will be delayed five days to allow settlements without court costs.

"(5) Mailing, sending, or by any method transmitting or delivering any printed form containing the words 'Certificate of Assignment' or which uses the abbreviation 'vs.' between the creditor's name and the debtor's name so that the recipient believes or tends to believe that an actual case exists between the two parties in the form of a law suit, or any form which asserts that the debtor has seven days to make final payment of the debt or be threatened with law suit by using the following language: 'WARNING' and 'Seven Day Official Notification'."

Credit Bureau thereafter made some changes in its debt collection forms, but the State believed that the revised forms were still deceptive and in violation of the injunction. On the trial of this case, the evidence revealed that Credit Bureau was continuing to mail forms which the injunction apparently was designed to prohibit. After the injunction was issued, Credit Bureau ordered 13,500 "Seven Day Notifications"; 6,000 "Notices of Impending Law Suit"; 5,000 "Preparatory Listings For Civil Court"; and 5,000 "Final Notices Before Suit." On March 8, 1973, the State filed its petition for civil penalties against Credit Bureau in the same court that had issued the injunction. The State sought assessment of penalties of $10,000 for each of seven separate violations. Credit Bureau answered and requested a jury. The trial court denied the jury request, conducted a trial, and rendered judgment that the injunction had been violated, in each of the seven instances, assessing civil penalties of $35,000 against Miller and Credit Bureau, jointly and severally.

This court granted the State's application for writ of error on points which urge that the court of civil appeals erred in its holdings that (1) defendants were entitled to a trial by jury, and (2) the State had the burden to prove that the defendants "knowingly" violated the injunction.

### Nature of This Suit

■ Whether the defendants were entitled to a jury requires our first deciding the nature of this suit. The State urges that its right to recover penalties is occasioned by Credit Bureau's violation of an injunction and that the action is one for civil contempt in which there is no right to trial by jury. It is our opinion that the penalty section of the Deceptive Trade Practices Act, article 5069, section 10.08[2] shows that the suit is one for civil penalties and not contempt. Subsection (a) of that statute makes it a misdemeanor to attempt to avoid compliance with the Consumer Credit Commissioner's investigative powers by withholding, concealing or destroying any docu-

2. "(a) Any person who, with intent to avoid, evade, or prevent compliance, in whole or in part, with Article 10.06 or 10.07 of this Chapter removes from any place, conceals, withholds, or destroys, mutilates, alters, or by any other means falsifies any documentary material or merchandise or sample thereof *is guilty of a misdemeanor* and on conviction is punishable by confinement in the county jail for not more than one year, or by a fine of not more than Five Thousand Dollars, or both.

"(b) Whenever any person fails to comply with a directive of the Commissioner pursuant to Article 10.06 of this Chapter, or whenever any person fails to comply with any civil investigative demand for documentary material duly served upon him under Article 10.07 of this Chapter, or whenever satisfactory copying or reproduction of any such material cannot be done and such person refuses to surrender such material, the Attorney General, through such officers or attorneys as he may designate, may file, in the District Court in the county in which such person resides, is found, or transacts business, and serve upon such person a petition for an order of such court for the enforcement of Article 10.06 or 10.07 of this Chapter, except that if such person transacts business in more than one county, the petition shall be filed in the county in which such person maintains his principal place of business, or in such other county as may be agreed upon by the parties to such petition. Whenever any petition is filed in the District Court in any county under this Article, the court shall have jurisdiction to hear and determine the matter so presented and to enter such order or orders as may be required to carry into effect the provisions of Article 10.06 or 10.07 of this Chapter. Any final order so entered shall be subject to appeal to the Texas Supreme Court. *Disobedience of any final order entered under this Article by any court is punishable as contempt of that order.*

"(c) Any person who violates the terms of an injunction issued under Article 10.04 of this Chapter *shall forfeit and pay to the State a civil penalty* of not more than Ten Thousand Dollars per violation. For the purposes of this Article, the District Court issuing an injunction shall retain jurisdiction, and the cause shall be continued, and in such cases the Attorney General, acting in the name of the State, may petition for recovery of civil penalties." (Emphasis added.)

mentary material or merchandise. Subsection (b) applies to failures to comply with the Commissioner's civil investigative demand for documentary material, reports, examination under oath, or examination of merchandise. Significantly, subsection (b) makes disobedience of any court order entered under article 5069, section 10.08 "punishable as contempt of that order."[3] Subsection (c), however, relates to punishment for violation of an injunction issued under article 5069, section 10.04. It contains no reference to contempt, but clearly refers to civil penalties. Thus, the Legislature has enacted an enforcement scheme which embraces convictions for misdemeanors in some instances, punishment for contempt in some instances and suits for payment of civil penalties in others. The Legislature chose to adopt a remedy of civil penalties in the case of a violation of an injunction.

We must next determine whether an action to enforce civil penalties under the Deceptive Trade Practices Act is one to which the right to a trial by jury attaches. Since the Act is silent about the right to a jury, we must determine whether the Texas Constitution fixes the right. The Texas Constitution contains two separate provisions regarding the right of trial by jury. The first is Article I, Section 15, found in the Bill of Rights of the Constitution;[4] the second is Article V, Section 10, contained in the Judiciary Article.[5]

### Bill of Rights Jury Article

Article I, Section 15, contains a jury provision similar to that found in the United States Constitution and every other state constitution. It states simply that "the right of trial by jury shall remain inviolate. . . ." In our opinion the Bill of Rights Article preserved the right to a trial by jury in a suit for the collection of civil penalties. It is well-established that the Bill of Rights provision continues the right to a jury in all actions where that right existed at the time the Constitution was adopted. *White v. White*, 108 Tex. 570, 196 S.W. 508 (1917); *Hatten v. City of Houston*, 373 S.W.2d 525 (Tex.Civ.App.1963, writ ref'd n. r. e.); *Hickman v. Smith*, 238 S.W.2d 838 (Tex.Civ.App.1951, writ ref'd). This interpretation is uniformly given to similar provisions in other jurisdictions. 47 Am.Jur.2d, *Jury* § 29 at 649 (1969).

Texas, by successive constitutions both as a Republic and as a State, has protected the right to a trial by jury in those cases where a jury would have been proper at common law. Tex.Const. art. I, § 15 (1876); Tex. Const. art. I, § 12 (1868); Tex.Const. art. I, § 12 (1866); Tex.Const. art. I, § 12 (1861); Tex.Const. art. I, § 12 (1845); Const. of the Republic of Texas, *Declaration of Rights*, # 9 (1836); *see White v. White, supra*; *Grigsby v. Reib*, 105 Tex. 597, 153 S.W. 1124 (1913); *Cockrill v. Cox*, 65 Tex. 669 (1886); 47 Am.Jur.2d, *Jury* § 17 (1969).

3. This subsection contemplates criminal, rather than civil contempt. The distinction has been explained in *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 441, 31 S.Ct. 492, 55 L.Ed. 797 (1911). The character and purpose of the contempt determines its nature. Civil contempt is often viewed as remedial, while criminal contempt is regarded as punitive. *See also Shillitani v. United States*, 384 U.S. 364, 369–370, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966).

4. § 15. Right of trial by jury
    Sec. 15. The right of trial by jury shall remain inviolate. The Legislature shall pass such laws as may be needed to regulate the same, and to maintain its purity and efficiency. Provided, that the Legislature may provide for the temporary commitment, for observation and/or treat-

ment, of mentally ill persons not charged with a criminal offense, for a period of time not to exceed ninety (90) days, by order of the County Court without the necessity of a trial by jury. As amended Aug. 24, 1935.

5. § 10. Trial by jury
    Sec. 10. In the trial of all causes in the District Courts, the plaintiff or defendant shall, upon application made in open court, have the right of trial by jury; but no jury shall be empaneled in any civil case unless demanded by a party to the case, and a jury fee be paid by the party demanding a jury, for such sum, and with such exceptions as may be prescribed by the Legislature.

■ At common law, suits for civil penalties were tried as actions for debt, and actions for debt were triable before a jury. 47 Am.Jur.2d, *Jury* §§ 17, 36 (1969); 1 Chitty, Pleadings 263 (3d ed. 1819); 50 C.J.S. *Juries* § 10 (1947); 3 Wendell's Blackstone's Commentaries 161–162 (1847). In *Hepner v. United States*, 213 U.S. 103, 29 S.Ct. 474, 53 L.Ed. 720 (1909), the United States brought suit to recover the penalty provided for the violation of the Alien Immigration Act. The court reviewed and cited a number of precedents holding that actions for penalties are recoverable in civil actions and held "the defendant was, of course, entitled to have a jury summoned in this case." *United States v. Hindman*, 179 F.Supp. 926 (D.N.J.1960), held that the defendants were entitled to a jury in a suit brought against them by the United States for civil penalties for violation of the Federal Trade Commission Act, a statute very similar to the Texas Deceptive Trade Practices Act, article 5069, section 10.01 *et seq. See also, Damsky v. Zavatt*, 289 F.2d 46 (2d Cir. 1961); *Connolly v. United States*, 149 F.2d 666 (9th Cir. 1945); *Atchison, Topeka & Santa Fe Ry. v. United States*, 178 F. 12 (8th Cir. 1910); *United States v. Friedland*, 94 F.Supp. 721 (D.Conn.1950); *United States v. Jepson*, 90 F.Supp. 983 (D.N.J. 1950); 5 Moore's Federal Practice, § 38.-31[1], 232–233 (2d ed. 1974). The right to a trial by jury is not limited to the precise form of action in which civil penalties were enforceable at common law. The right exists when "the action involves rights and remedies of the sort typically enforced in an action at law." *Curtis v. Loether*, 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974); 5 Moore's Federal Practice, § 38.11[7], 128 (2d ed. 1974).

### Judiciary Jury Article

We also hold that Article V, Section 10, of the Constitution extends the right to a jury to Credit Bureau in this case. Some decisions have mistakenly treated the Bill of Rights and the Judiciary Articles as identical in meaning, that is, as protecting the right of trial by jury only as it existed at common law or by statutes in effect at the time of the adoption of the Constitution. *Hickman v. Smith*, 238 S.W.2d 838 (Tex.Civ. App.1951, writ ref'd).

■ In *Cockrill v. Cox*, 65 Tex. 669 (1886), the court correctly wrote that the present Judiciary Article protecting the right to a jury was added by the Constitution of 1845 because the Bill of Rights Article contained in the Constitution of the Republic did not extend to causes in equity. Tex.Const. art. IV, § 16 (1845). In other words, the Judiciary Article was intended to broaden the right to a jury afforded by Article I, Section 15. *Tolle v. Tolle*, 101 Tex. 33, 104 S.W. 1049, 1050 (1907); *Hatten v. City of Houston*, 373 S.W.2d 525, 531–535 (Tex.Civ.App.1963, writ ref'd n. r. e.); *Walsh v. Spencer*, 275 S.W.2d 220 (Tex.Civ. App.1955, no writ). Subsequent constitutions extended the right to a jury to "all cases of law or equity." Tex.Const. art. V, § 16 (1868); Tex.Const. art. IV, § 20 (1866); Tex.Const. art. IV, § 16 (1861); Tex.Const. art. IV, § 16 (1845). It was the present Constitution of 1876 which changed the words of the earlier constitutions from "all cases of law or equity" to its present form, "trial of all causes."

The term "cause" is defined in Black, Law Dictionary (4th ed. 1951), as "a suit, litigation, or action. Any question, civil or criminal, litigated or contested before a court of justice." The United States Supreme Court in *Ex parte Milligan*, 71 U.S. 2, 112, 18 L.Ed. 281 (1866), stated that in any legal sense, "action," "suit" and "cause" are convertible terms. The court then defined the terms to mean any legal process which a party institutes to obtain his demand or by which he seeks his right. This broad meaning of the word, "cause," comports with the interpretation given by other courts and legal writers in the period when our present Constitution was drafted. *See also, Fish v. Farwell*, 160 Ill. 236, 43 N.E. 367 (1895); *Gibson v. Sidney*, 50 Neb. 12, 69 N.W. 314 (1896); *Baltimore & O. R. Co. v.*

*Larwill*, 83 Ohio St. 108, 93 N.E. 619 (1910); Abbott, Dictionary of Terms & Phrases used in American or English Jurisprudence 193 (1879); Bouviers, Law Dictionary 211 (1859); 1 C.J., *Actions* § 26(c) (1914); 1 Ruling Case Law, *Actions* § 3 (1914).

█ Special circumstances justify our former holdings that not all adversary proceedings qualify as a "cause" under the Judiciary Article. These cases have been isolated upon a case-by-case determination. Harris, Jury Trial in Civil Cases—A Problem in Constitutional Interpretation, 7 Sw. L.J. 1, 7–13 (1953); 7 Tex.L.Rev. 663 (1928). They include such proceedings as civil contempt proceedings, *Ex parte Allison*, 99 Tex. 455, 90 S.W. 870 (1906); *Crow v. State*, 24 Tex. 12 (1859); *Johnson v. State*, 267 S.W. 1057, 1062 (Tex.Civ.App.1925, writ ref'd); election contests, *Hammond v. Ashe*, 103 Tex. 503, 131 S.W. 539 (1910); habeas corpus proceedings for the custody of minor children, *Burckhalter v. Conyer*, 9 S.W.2d 1029 (Tex.Com.App.1928, jdgmt adopted); *Pittman v. Byars*, 112 S.W. 102 (Tex.Civ. App.1908, no writ); suit for removal of a sheriff, *Davis v. State*, 35 Tex. 118 (1872); appeals in administrative proceedings, *State v. De Silva*, 105 Tex. 95, 145 S.W. 330 (1912); *Texas Liquor Control Board v. Jones*, 112 S.W.2d 227 (Tex.Civ.App.1937, no writ), and others. In each of the above instances, there is some special reason that a jury has been held unsuitable, but no sound reason exists for the denial of a jury in this case. We hold that Credit Bureau was entitled to a trial by jury to determine whether it committed the violations of the injunction with which it was charged, and if so to determine the amount of civil penalties which should be assessed against it.

█ We disapprove the holding of the court of civil appeals that the State has the burden to prove that Credit Bureau "knowingly" violated the injunction. Section 10.-01 of article 5069 is the relevant statute, and it does not contain the word "knowingly" or any synonym of that word. The statute, in fact, gives us directions for interpreting the statute:

It is the intent of the legislature that in construing Section (a) of this Article, the courts, to the extent possible, will be guided by Section (b) of Article 10.01 of this Chapter and the interpretations given by the Federal Trade Commission and the Federal Courts to Section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C., 45(a)(1)).

Tex.Rev.Civ.Stat.Ann. art. 5069, § 10.02(b) (1969).

*United States v. J. B. Williams Co., Inc.*, 498 F.2d 414 (2d Cir. 1974), is helpful in its quotation from the opinion of *United States v. H. M. Prince Textiles, Inc.*, 262 F.Supp. 383, 388 (S.D.N.Y.1966):

[L]ack of willfulness or intention is not a valid defense to an action by the government to recover civil penalties. All that the government need prove is that a cease and desist order has in fact been violated, which has been done in this case. (Citations ommitted) [Sic] The reason for this is obvious. A cease and desist order is designed to induce the defendant to rid himself of any business practices which have the capacity to violate the order. The main objective is to insure the protection of the public which must be protected whether the violations are intentional or not. See *Standard Distributors v. F. T. C.*, 211 F.2d 7 (2nd Cir. 1954); *Parke, Austin & Lipscomb, Inc. v. F. T. C.*, 142 F.2d 437 (2nd Cir. 1944).

We affirm the judgment of the court of civil appeals which reversed the judgment of the trial court and remanded the cause to the trial court.