# Supreme Court of Texas

---

No. 20-0179

---

In the Matter of Troy S. Poe Trust

---

On Petition for Review from the
Court of Appeals for the Eighth District of Texas

---

**Argued December 2, 2021**

JUSTICE HUDDLE delivered the opinion of the Court.

JUSTICE BUSBY filed a concurring opinion, in which Justice Devine and Justice Young joined.

The question before us is whether parties seeking or opposing a trust modification under Texas Trust Code Section 112.054 have a right to a trial by jury. Here, the probate court modified a trust under Section 112.054 but denied a trustee's demand for a jury trial. The court of appeals reversed, holding that the Trust Code conferred a right to a jury trial and that denial of the trustee's jury demand was harmful error. The court of appeals reasoned that the Trust Code "generally provides for jury trials" by incorporating the Texas Rules of Civil Procedure, which in turn set forth the procedures for requesting a jury. We hold that there is no statutory right to a jury trial in a Section 112.054 judicial trust-modification proceeding. Accordingly, we

reverse and remand for the court of appeals to address in the first instance petitioners' constitutional argument—not raised until the motion for rehearing in the court of appeals—that a Section 112.054 judicial trust-modification proceeding is not a "cause" within the meaning of Article V, Section 10 of the Texas Constitution but, rather, a "special proceeding" falling outside its purview.

## I. Background

### A. Dick establishes the Troy S. Poe Trust

Richard C. "Dick" Poe established the Troy S. Poe Trust in 2007 to provide for his son, Troy, who has cerebral palsy and requires round-the-clock care. The trust designates three trustees: (1) Dick; (2) Dick's other son, Richard C. Poe II[1]; and (3) Dick's longtime accountant, Anthony Bock. The trust has significant net assets and produces enough income that there has been no need to invade the trust corpus in the years since it was formed. Troy is the trust's sole beneficiary. Upon Troy's death, the trust will terminate, and the corpus must be distributed to Dick's issue; currently, Dick's only living issue are Troy and Richard.

A few trust provisions are relevant to this dispute. For one, the trust mandates that the trustees act "jointly," which the parties all agree imposes a unanimity requirement on their decision-making regarding trust administration. Further, in the event a trustee can no longer serve, the remaining trustee or trustees shall serve without

---

[1] For simplicity's sake, we (like the court of appeals) refer to the father as "Dick" and the son as "Richard."

appointment of a successor. And if no trustee remains, a designated bank will serve as sole trustee.

The trust is a party to a long-term Care Agreement that sets forth the terms under which Troy's caregiver, Angel Reyes, will care for Troy and be compensated for doing so.[2] Under that agreement, Reyes lives with and provides full-time care to Troy in a home that Dick built. On top of meeting Troy's day-to-day needs, Reyes's duties include ensuring that Troy enjoys "a wholesome and healthy home environment," "companionship," and "social interaction and entertainment to the extent possible." In exchange, the agreement provides that Reyes shall be paid a salary and reimbursed for "reasonable out-of-pocket expenses for Troy's care." But reimbursement is subject to a monthly cap, and Reyes must document expenses.[3]

## B.    During his lifetime, Dick effectively acts as sole trustee

Before his death, Dick administered the trust essentially on his own, often making decisions without consulting Richard or Bock, the two other trustees. For example, Dick unilaterally authorized the trust's reimbursement of expenses Reyes incurred in connection with Troy's social activities.[4] And Dick sometimes approved reimbursements of

---

[2] The original Care Agreement was for a ten-year term. It was renewed for another ten years in 2015.

[3] The agreement initially capped monthly reimbursements at $1,500, subject to periodic increases. By the time of trial, the cap had increased to $1,613.

[4] With Reyes's assistance, Troy enjoys an active social life. He skis, swims, and frequently hosts friends in his home. Troy also has travelled extensively.

3

Reyes's expenses that exceeded the monthly cap. Though the trust required that the three trustees act "jointly," no one complained about Dick's unilateral administration of the trust.

## C. Multiple disputes arise after Dick's death

Things changed dramatically after Dick's death. At first, Bock unilaterally administered the trust, and he largely sought to mirror Dick's past practices. But Bock and Richard's relationship deteriorated not long thereafter. Bock served as co-executor of Dick's estate and, as Dick's longtime accountant, had extensive knowledge of Dick's financial matters. Richard formed the opinion that Bock was acting improperly and against Richard's interests. This adversity led Richard to sue Bock and seek revocation of Bock's CPA license.

Their animosity spilled over to trust matters. Richard's attorney demanded that Bock "strictly comply" with the trust's requirement that the co-trustees "act jointly." Richard asserted that Bock should take no further actions on behalf of the trust without obtaining Richard's consent. In particular, Richard demanded that Bock not make any "unilateral decisions . . . in connection with the Care Agreement."

Bock began including Richard in the trust's decision-making, but, due to their fraught relationship, they had difficulty reaching agreement on some matters. Richard denied Bock's request to preapprove recurring expenses, and Richard complained that Bock was late in submitting bills. He accused Bock of stealing and balked at expenses he believed benefitted Reyes's family and friends rather than Troy himself. For his part, Bock contended that Richard ignored and delayed responding to requests for approval of trust expenditures. Fueled by

4

these and other disputes unrelated to the trust, their relationship fractured to the point that Bock refused to communicate with Richard orally.

## D.    Bock requests trust modification

Bock filed a petition in the probate court seeking modification of the trust under Texas Trust Code Section 112.054.  Section 112.054 empowers a court, on the petition of a trustee or beneficiary, to modify the trust's terms if any one of five conditions is met.  TEX. PROP. CODE § 112.054(a).[5]  Bock alleged that two of the statute's five conditions were met: "(1) the purposes of the trust have been fulfilled or have become illegal or impossible to fulfill" and "(2) because of circumstances not known to or anticipated by the settlor, the [modification] order will further the purposes of the trust." *Id.* § 112.054(a)(1), (2).  Bock alleged that "differences of opinion" and the "pending litigation" between Bock and Richard made it difficult to act unanimously, put a strain on Troy, and made the purposes of the trust "impossible to accomplish."  Bock requested that the court modify the trust to add a third trustee, remove the unanimity requirement, and further specify the relevant considerations governing the trustees' distributions.  Bock also requested that the court ratify his actions regarding the trust since Dick's death.

---

[5] The Texas Trust Code was enacted in 1983 as Subtitle B of Title 9 of the Texas Property Code, and it currently comprises Sections 111.001 through 117.012 of the Property Code.  *See* Act of May 27, 1983, 68th Leg., R.S., ch. 567, art. 2, § 2, 1983 Tex. Gen. Laws 3269, 3332.  Accordingly, while we refer to provisions of the Trust Code, our citations are to the Property Code.

Troy, acting through his court-appointed guardian ad litem and attorney ad litem, supported the modification request. Richard opposed modification and counterclaimed against Bock for breach of trust. Richard also demanded a jury trial on all triable issues.

## E.    The probate court modifies the trust

The probate court denied Richard's jury demand and conducted a two-day bench trial solely on Bock's request for a trust modification. The probate court found that, because of "changed circumstances" since Dick's death, "the purposes of the Trust have become impossible to fulfill, and modification will further the Trust purposes." The court also effected several changes to the trust's terms and entered an Order Modifying Trust, which:

- appointed a third trustee to replace Dick;

- required at least three trustees and provided a method for appointing successor trustees;

- eliminated the requirement that the trustees act "jointly" and permitted decisions to be made by majority vote;

- authorized trustees to pay expenses associated with periodic vacations for Troy's benefit and associated expenses for assistants or travel companions;

- required trustees, in making distributions from the trust, to consider Troy's standard of living at the time of Dick's death and the fact that, to accomplish that standard of living, it is often necessary to include substantial ancillary expenses;

- acknowledged that there will be "indirect benefit" to Troy's caregivers, their families, and Troy's family, and required trustees to consider these additional expenses that enhance the quality and enjoyment of Troy's life; and

6

- required trustees, in making distributions from the trust, to give "primary consideration" to Troy's needs and interests "without giving any consideration to . . . any vested or contingent remainder beneficiaries."

The probate court severed the remaining claims, including Richard's counterclaim, and the modification order became a final judgment.

## F.    The court of appeals reverses and remands for a jury trial

Richard appealed, arguing that (1) he was erroneously denied a trial by jury, and (2) the modifications were improper because they contravened Dick's intent.  The court of appeals reversed without addressing the propriety of the modifications because it concluded that the trial court's refusal to grant a jury trial amounted to harmful error. 591 S.W.3d 168, 182 (Tex. App.—El Paso 2019).  The court of appeals noted, without analysis, that Article V, Section 10 of the Texas Constitution provides a jury right in "causes" and that the Legislature is authorized by Article I, Section 15 to regulate jury trials.  *Id.* at 177. It then "look[ed] to the statutory framework to determine whether parties possess a right to a jury trial."  *Id.*  It reasoned that Trust Code Section 115.012 "generally provides for jury trials" in actions brought under the Trust Code.  *Id.* at 178; *see* TEX. PROP. CODE § 115.012 ("Except as otherwise provided, all actions instituted under this subtitle are governed by the Texas Rules of Civil Procedure and the other statutes and rules that are applicable to civil actions generally.").  According to the court of appeals, Section 115.012's general adoption of the Rules of Civil Procedure incorporates rules setting forth procedures for requesting a jury and thus provides a right to a jury trial unless a

7

different statutory provision precludes a jury in a particular circumstance. 591 S.W.3d at 178.

Bock and Troy sought rehearing, challenging the court of appeals' statutory analysis and arguing, for the first time, that no jury right attaches in a Section 112.054 judicial trust-modification proceeding because it is a "special proceeding" outside the scope of Article V, Section 10 of the Texas Constitution. The court of appeals denied rehearing, and both Bock and Troy petitioned for review.

## II.    Discussion

Bock and Troy contend that the probate court properly declined to submit any issue to the jury because neither the Trust Code nor the Texas Constitution provides a right to trial by jury in a judicial trust-modification proceeding. We first consider whether Richard had a statutory jury right. *See VanDevender v. Woods*, 222 S.W.3d 430, 432 (Tex. 2007) ("Judicial restraint cautions that when a case may be decided on a non-constitutional ground, we should rest our decision on that ground and not wade into ancillary constitutional questions.").

## A.    The Trust Code does not create a jury right in a judicial trust-modification proceeding.

Before the enactment of the Trust Code, courts derived authority to modify trusts under the "rule or doctrine of deviation implicit in the law of trusts." *Amalgamated Transit Union, Loc. Div. 1338 v. Dall. Pub. Transit Bd.*, 430 S.W.2d 107, 117 (Tex. App.—Dallas 1968, writ ref'd n.r.e.). Under this doctrine, a court had the power to "order a deviation from the terms of the trust if it appears to the court that compliance with the terms of the trust is impossible, illegal, impractical or inexpedient, or that owing to circumstances not known to the settlor and

8

not anticipated by him, compliance would defeat or substantially impair the accomplishment of the purpose of the trust." *Id.*; *see also Smith v. Drake*, 94 S.W.2d 236, 238 (Tex. App.—Austin 1936, no writ) (citing RESTATEMENT (FIRST) OF TRUSTS § 167 (AM. L. INST. 1935)).

In enacting Section 112.054, the Legislature essentially codified the doctrine of deviation.[6] Section 112.054, titled "Judicial Modification, Reformation, or Termination of Trusts," currently provides that "[o]n the petition of a trustee or a beneficiary, a court may order" certain changes to a trust. TEX. PROP. CODE § 112.054(a). But, before a court may do so, one or more enumerated statutory predicates must be shown:

(1) the purposes of the trust have been fulfilled or have become illegal or impossible to fulfill;

(2) because of circumstances not known to or anticipated by the settlor, the order will further the purposes of the trust;

(3) modification of administrative, nondispositive terms of the trust is necessary or appropriate to prevent waste or impairment of the trust's administration;

(4) the order is necessary or appropriate to achieve the settlor's tax objectives or to qualify a distributee for governmental benefits and is not contrary to the settlor's intentions; or

(5) subject to Subsection (d):

---

[6] *See* Melissa J. Willms, *Decanting Trusts: Irrevocable, Not Unchangeable*, 6 EST. PLAN. & CMTY. PROP. L.J. 35, 45 (2013) (explaining that "the Texas legislature enacted a statutory provision adopting the doctrine of deviation, as stated in § 167 of the Second Restatement of Trusts and in [*Amalgamated*]"); State Bar of Tex., Guide to the Texas Trust Code, at 10 (3d ed. 1996) ("Section 112.054 adopts, in broad terms, the doctrine of deviation.").

9

> (A)    continuance of the trust is not necessary to achieve any material purpose of the trust; or
>
> (B)    the order is not inconsistent with a material purpose of the trust.

*Id.* § 112.054(a)(1)–(5).[7]

If one or more of these predicates is established, a court is empowered to order "that the trustee be changed, that the terms of the trust be modified, that the trustee be directed or permitted to do acts that are not authorized or that are forbidden by the terms of the trust, [or] that the trustee be prohibited from performing acts required by the terms of the trust." *Id.* § 112.054(a). But this statutory power is not unbounded. Section 112.054(b) requires a court to exercise its discretion to order a modification "in the manner that conforms as nearly as possible to the probable intention of the settlor." *Id.* § 112.054(b).

Section 112.054 does not confer a right to a jury trial in a judicial trust-modification proceeding. Indeed, the heading contemplates "*Judicial* Modification" and the text does not mention a jury at all. *Id.* § 112.054 (emphasis added). Instead, the statute repeatedly references the "court," "its discretion," and "its decision." *Id.* § 112.054(a), (b). There is no indication in the text that the Legislature intended to confer a jury-trial right in these proceedings. *See Broadway Nat'l Bank v. Yates Energy Corp.*, 631 S.W.3d 16, 23 (Tex. 2021) ("Our objective in construing a statute is to effectuate the Legislature's intent as we find it in the statute's text."). All the textual evidence shows it did not.

---

[7] Relief under subsection (a)(5) is not permitted "unless all beneficiaries of the trust have consented to the order or are deemed to have consented to the order." TEX. PROP. CODE § 112.054(d).

Richard argues that the statute is merely "silent" on the right to a jury, and that this silence is no indication that the Legislature intended to *deny* a jury right. He contrasts Section 112.054 with other statutes in which the Legislature expressly precluded the use of a jury. *See, e.g.*, Tex. Fam. Code § 105.002(b) (instructing that "[a] party may not demand a jury trial" in suits "in which adoption is sought" or "to adjudicate parentage"). But the Legislature also knows how to create a statutory jury right. *Cf. id.* § 105.002(a) ("Except as provided by Subsection (b), a party may demand a jury trial."). And there is no textual indication that it has done so here.

Unable to discern a right to a jury trial from the text of Section 112.054, the court of appeals reasoned that the Trust Code "generally provides for jury trials." 591 S.W.3d at 178. For that proposition, it relied on Section 115.012, which is titled "Rules of Procedure" and states: "Except as otherwise provided, all actions instituted under this subtitle [the Trust Code] are governed by the Texas Rules of Civil Procedure and the other statutes and rules that are applicable to civil actions generally." Tex. Prop. Code § 115.012. According to the court of appeals, the rules "outline how one requests a jury" and "[c]ompliance with those rules would thus give Richard a right to a jury trial." 591 S.W.3d at 178.

We disagree. Nothing in the text of Section 115.012 can be understood to establish a jury right. Section 115.012 simply states that actions brought under the Trust Code are controlled by the ordinary procedures for civil actions. The court of appeals correctly noted that the rules articulate procedures for requesting a jury. *See* Tex. R. Civ.

11

P. 216 (titled "Request and Fee for Jury Trial"). But as we have explained, these procedural requirements are "prerequisites to a jury trial, not guarantees of one." *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 130 (Tex. 2004). Such rules merely reflect that a jury right in a civil case is "not self-executing" and that a litigant must take certain steps "to invoke and perfect" his jury right. *Sunwest Reliance Acquisitions Grp., Inc. v. Provident Nat'l Assurance Co.*, 875 S.W.2d 385, 387 (Tex. App.—Dallas 1993, no writ). They presume that the litigant has a jury right to invoke in the first place.

The Trust Code's incorporation of the Rules of Civil Procedure cannot be construed to create a jury right where one does not already exist. The procedures established by those rules are "not meant to alter the parties' . . . right to a jury trial." *Sw. Refin. Co. v. Bernal*, 22 S.W.3d 425, 437 (Tex. 2000) (discussing TEX. R. CIV. P. 42); *see also* TEX. R. CIV. P. 815 ("These rules shall not be construed to enlarge or diminish any substantive rights or obligations of any parties to any civil action."). In short, no right to a jury trial in a judicial trust-modification proceeding was created by Trust Code Section 112.054, Trust Code Section 115.012, or the Texas Rules of Civil Procedure, whether they are viewed alone or in combination.

## B. The court of appeals did not confront the novel constitutional question petitioners raise.

The Texas Constitution provides "two guarantees of the right to trial by jury" in civil proceedings. *Barshop v. Medina Cnty. Underground Water Conservation Dist.*, 925 S.W.2d 618, 636 (Tex. 1996). The Bill of Rights ensures that the "right of trial by jury shall remain inviolate." TEX. CONST. art. I, § 15. Our cases have said, and

12

the parties here do not dispute, that this provision maintains a jury right for the sorts of actions tried by jury when the Constitution was adopted and, thus, "only applies if, in 1876, a jury would have been allowed to try the action or an analogous action." *Barshop*, 925 S.W.2d at 636.

At the time of the Constitution's adoption, there was no common-law right to a jury trial in equitable actions and, consequently, our courts have held that the Bill of Rights did "not alter the common law tradition eschewing juries in equity." *Casa El Sol–Acapulco, S.A. v. Fontenot*, 919 S.W.2d 709, 715 (Tex. App.—Houston [14th Dist.] 1996, writ dism'd by agr.). However, to provide a jury right in equitable actions, "a special clause was introduced." *Cockrill v. Cox*, 65 Tex. 669, 672 (1886). In our present Constitution, that guarantee is found in Article V, the Judiciary Article. It provides:

> In the trial of all causes in the District Courts, the plaintiff or defendant shall, upon application made in open court, have the right of trial by jury; but no jury shall be empaneled in any civil case unless demanded by a party to the case, and a jury fee be paid by the party demanding a jury, for such sum, and with such exceptions as may be prescribed by the Legislature.

TEX. CONST. art. V, § 10. We have held, and no party here disputes, that the Judiciary Article "covers all 'causes' regardless of whether a jury was available in 1876." *Tex. Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 527 (Tex. 1995).

This Court has noted that the term "cause" had a "broad meaning . . . when our present Constitution was drafted." *State v. Credit Bureau of Laredo, Inc.*, 530 S.W.2d 288, 292 (Tex. 1975). At that time, "action,"

13

"suit," and "cause" were treated as "convertible terms," meaning "any legal process which a party institutes to obtain his demand or by which he seeks his right." *Id.* (citing *Ex parte Milligan*, 71 U.S. 2, 112 (1866)); *see Tolle v. Tolle*, 104 S.W. 1049, 1050 (Tex. 1907); *see also In re Abbott*, 628 S.W.3d 288, 293 (Tex. 2021) ("Our goal when interpreting the Texas Constitution is to give effect to the plain meaning of the text as it was understood by those who ratified it.").

Yet we have held for more than a century that the Judiciary Article's broad language "does not embrace" every court proceeding. *See Hammond v. Ashe*, 131 S.W. 539, 539 (Tex. 1910) (holding that election contests are not "causes" but merely "proceedings specially created and controlled by the statutes which allow them"); *see also Oncor Elec. Delivery Co. LLC v. Chaparral Energy, LLC*, 546 S.W.3d 133, 144 (Tex. 2018) (explaining that the constitutional right to a jury trial does not attach in certain types of adversary proceedings); *Garcia*, 893 S.W.2d at 527 (same).

We identified in *Credit Bureau* several proceedings that for "some special reason" fall outside the scope of the Judiciary Article: civil contempt proceedings, election contests, habeas corpus proceedings for custody of minor children, suits for the removal of a sheriff, and appeals in administrative proceedings. 530 S.W.2d at 293. But this list was not exhaustive. *Id.* (noting there are "others"). And since *Credit Bureau*, our courts of appeals have held other proceedings to be beyond the Judiciary Article's purview.[8] Thus far, we have not articulated a precise

---

[8] *See Kruse v. Henderson Tex. Bancshares, Inc.*, 586 S.W.3d 118, 125 (Tex. App.—Tyler 2019, no pet.) (holding that "[t]he proceeding for determining

14

test for determining when a proceeding falls outside of the Judiciary Article's scope, and resolution of the question has been on a "case-by-case" basis instead. *Id.*

Petitioners raise multiple theories about why a judicial trust-modification proceeding falls outside the Judiciary Article. Richard responds that, as he argued in the court of appeals, a judicial trust-modification proceeding is a "cause" within the meaning of the Judiciary Article. He also contends that petitioners waived their argument that the Judiciary Article does not apply to judicial trust-modification proceedings by raising that argument for the first time in a motion for rehearing in the court of appeals.

We reject this waiver argument. Bock and Troy prevailed in the trial court and were appellees in the court of appeals. As such, they "did not need to raise every argument supporting the trial court's judgment" in their appellees' brief. *In re G.X.H.*, 627 S.W.3d 288, 295 (Tex. 2021). "While ordinarily a party waives a complaint not raised in the court of appeals, a complaint arising from the court of appeals' judgment may be raised either in a motion for rehearing in that court or in a petition for review in this Court." *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 125 (Tex. 2010). Here, Bock and Troy noted in their appellees' brief the constitutional source of the jury trial

the fair value of a dissenting shareholder's ownership interest is not a 'cause' within the meaning of Article V, Section 10 of the Texas Constitution"); *Roper v. Jolliffe*, 493 S.W.3d 624, 635 (Tex. App.—Dallas 2015, pet. denied) (holding that "family violence protective orders are proceedings specially created by the legislature to address family violence and are not 'causes' within the meaning of the constitution").

15

right and argued that it was unavailable for various reasons that did not include the arguments they assert in this Court. Yet Bock and Troy's complaint does not arise from any action of the trial court but instead from the court of appeals' conclusion that Richard was entitled to a jury trial. Accordingly, petitioners preserved their argument that the Constitution does not require a jury trial for Section 112.054 proceedings by raising it in their motion for rehearing and petitions for review. *See G.X.H.*, 627 S.W.3d at 295; *see also G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 518–19 (Tex. 2015).

As for the merits, petitioners argue that a judicial trust-modification proceeding is not a "cause" but a special proceeding lacking many of the ordinary "characteristic[s] of a suit either at law or in equity." *Gibson v. Templeton*, 62 Tex. 555, 558 (1884); *see Kruse*, 586 S.W.3d at 125 ("Special proceedings, and incidental or supplemental proceedings do not fall within the term 'cause.'"). Bock argues that requiring a jury to resolve the predicate grounds would divest the court of "its general power over the administration of trust." *Amalgamated*, 430 S.W.2d at 117; *cf. Bergeron v. Sessions*, 561 S.W.2d 551, 555 (Tex. App.—Dallas 1977, writ ref'd n.r.e.) (denying jury where "jury intervention would impermissibly transfer control and management of the receivership from the court to the jury"). Petitioners also contend that the predicate questions that determine whether modification is appropriate under Section 112.054 are "unsuitable" for a jury and present legal inquiries that cannot be submitted to a jury. *Credit Bureau*, 530 S.W.2d at 293; *see State v. Tex. Pet Foods, Inc.*, 591 S.W.2d

16

800, 803 (Tex. 1979) ("[O]nly ultimate issues of fact are submitted for jury determination.").

The court of appeals confronted none of these constitutional arguments, which were first presented on rehearing. By that time, the court of appeals had concluded that the Trust Code's incorporation of the Rules of Civil Procedure conferred a right to a jury trial. That holding made in-depth treatment of the constitutional arguments unnecessary. Our holding today, however, changes that. The question is whether these novel and difficult questions on an issue of great importance should be addressed by this Court in the first instance. *G.T. Leach Builders*, 458 S.W.3d at 519 (explaining that this Court's decision to address asserted error arising from the court of appeals' judgment is "discretionary" and informed by prudential considerations).

As a court of last resort, it is not our ordinary practice to be the first forum to resolve novel questions, particularly ones of widespread import. *See, e.g.*, *City of Fort Worth v. Rylie*, 602 S.W.3d 459, 466 (Tex. 2020) ("We do not address the second issue . . . because it represents an important issue of first impression in this Court and the court of appeals did not reach it. We thus remand the case to that court so that it can address and decide that issue in the first instance."). Rather, this Court's preferred process is to decline to address and defer such questions until after "complete vetting of the parties' potential arguments in the lower courts." *Pidgeon v. Turner*, 538 S.W.3d 73, 87 (Tex. 2017) (quoting *Hegar v. Tex. Small Tobacco Coal.*, 496 S.W.3d 778, 792 (Tex. 2016)); *see also Wasson Ints., Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 439 (Tex. 2016) (remanding case for court of appeals to

17

address unaddressed questions "in the first instance").  That process is especially crucial where, as here, the case presents constitutional issues with ramifications far beyond this case.

Following our preferred practice, we remand the case to the court of appeals to address petitioners' constitutional arguments in the first instance.  And we echo the concurrence's view that *amici* input could greatly aid the court of appeals' decisional process.

### III.    Conclusion

The court of appeals erred by concluding that the Trust Code's incorporation of the Texas Rules of Civil Procedure creates a right to a trial by jury in a Section 112.054 judicial trust-modification proceeding. We reverse the court of appeals' judgment and remand the case to that court for consideration of petitioners' constitutional arguments in the first instance and, if necessary, the unaddressed issues raised by respondent in that court.

Rebeca A. Huddle
Justice

**OPINION DELIVERED:** June 17, 2022